IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-649

Filed 7 May 2025

Wake County, No. 20CVD000936-910

RICHARD RIGGAN, JR., Plaintiff,

v.

CHELSEA ANDREWS, Defendant.

Appeal by Mother from order entered 11 December 2023 by Judge Julie L. Bell in Wake County District Court. Heard in the Court of Appeals 13 February 2025.

*No brief filed on behalf of Richard T. Riggan, Jr., pro se plaintiff-appellee.*

*Law Offices of Stephanie J. Brown, by Stephanie J. Brown, for defendant-appellant.*

ARROWOOD, Judge.

Chelsea Andrews ("Mother") appeals from an order entered 11 December 2023 denying her motion to appoint a parenting coordinator and granting Richard Riggan's ("Father") motion for sanctions against Mother. For the following reasons, we vacate and remand to the trial court for actions consistent with this opinion.

I.      Background

Father and Mother were never married but have one child ("T.R.") together, born on 27 March 2015. On 21 January 2020, Father filed a complaint for custody in Wake County. He alleged that the parties had previously entered into a parenting

agreement, which provided for Father to have visitation rights every other weekend. On 28 February 2020, Mother filed her Answer and Counterclaim for child support. On 1 May 2020, Father filed an emergency custody motion for T.R. That same day, a hearing regarding child custody took place in which the parties resolved their dispute and a temporary order was entered where Father received visitation with T.R. every weekend until a subsequent hearing for permanent custody could take place.[1]

The hearing on a permanent custody order was to take place on 20 July 2020, however, the hearing was continued because Father had not received timely discovery from Mother. Although the hearing was postponed through an order for continuance, there was no extension of the visitation agreement agreed upon on 1 May 2020. On 13 August 2020, the trial court entered a Consent Order for temporary custody order in which both Mother and Father had temporary legal custody of T.R. and Mother had temporary physical custody of T.R. Father received visitation with T.R. every other weekend. The parties were ordered to exchange the child for visitation at Triangle Town Center. On 7 October 2020, a Consent Order Modifying Temporary Custody Order was entered adding more detailed provisions to allow Father to call or video-chat T.R. every Monday, Wednesday, and Friday and modified the pick-up time and location for exchange of the child for Father's visitation weekends with T.R.

---

[1] The motion for emergency custody and temporary order are not in our record but were referenced in the Consent Order for Temporary Child Custody.

On 2 September 2021, the trial court entered a Permanent Order Child Custody and Child Support (Permanent Custody Order) by consent of the parties.[2] The parties waived findings of fact and conclusions of law. The Permanent Custody Order awarded Mother sole legal and physical custody of T.R., but did allow for the parties to "mutually consent" to a liberal visitation schedule for Father. Father and Mother were to only communicate in writing, via email or text-message. This order provided that "neither party is seeking child support from the order" and did not award child support but did require the parties each to pay half of the child's uninsured medical expenses.

On 4 and 5 January 2023, the trial court held a hearing on "Review of Custody from the November 18th hearing" and entered an "Order Regarding Custody" on 17 March 2023.[3] The Order Regarding Custody does not mention a motion to modify a prior order or any change of circumstances but includes findings about events extending back to 2016, before the parties began living separately. In this order, after making several findings regarding the initial temporary custody orders, the trial court found as follows:

> 11. Ultimately when Father was pro se and Mother had
> counsel the parties entered into a Permanent Order for

---

[2] The parties signed this Order on 27 July 2021 but the trial court signed it on 1 September 2021 and it was filed the next day.

[3] Our record does not include any motion for modification of child custody and there is no document indicating why the trial court was holding a hearing regarding custody on 18 November, apparently in 2022, although the Order does not mention the year. Therefore, we do not know what happened to cause the trial court to "review" custody in 2023, and the findings of fact in the order do not mention any dates of the events noted after 2019.

Child Custody and Child Support.[4] Said Order provided that Mother had sole legal custody of the minor child and sole physical custody of the minor child, but the parties may mutually consent to liberal visitation for Father pursuant to a schedule to be determined by the parties.

12. Currently there is an Order that grants Mother custody of the minor child and Father telephone calls until this hearing on the merits could take place.

13. Mother testified that Father abused her in 2016, 2017, 2018 and 2019 when they were together.

14. Mother has allowed Father to have unsupervised visitation with the minor child in the past.

15. Mother does not believe that Tanner should have a relationship with his dad.

16. Mother testified that she is concerned that her son will grow up to be like his father.

17. Mother has told Father that she does not want him to be around the minor child, and that she has someone who can fill his shoes.

18. Mother would like her current boyfriend to be able to adopt Tanner and has asked Father to sign over his rights.

19. Mother initially denied she wanted her current boyfriend to adopt Tanner but ultimately admitted she lied under oath.
20. Mother has told Father he will not see the minor child.

21. Besides Mother, Father has also engaged in domestic violence with his wife.

---

[4] This finding refers to the Permanent Custody Order entered in September 2021. Both parties were represented by counsel when the first custody orders were entered, specifically the Consent Order for Temporary Child Custody in August 2020 and the Consent Order Modifying Temporary Child Custody in October 2020.

22. On an occasion when Father was angry with Mrs. Riggan and his stepdaughter he threated to flattened (sic) the step daughter's tires on her car.

23. Later three out of four of the stepdaughter's tires on her car flattened.

24. Father has told his wife that "a restraining order would not stop him".

25. Father threatened to kill his wife and said he would set her parents' trailer on fire.

26. Father has completed the Dose program and says he learned a lot including how to walk away when he is angry.

27. Father has called women the B-word while Tanner is present.

28. Father has argued and hit Mother while Tanner was present.

29. No evidence was presented about Father ever hitting the minor child.

30. Father has expressed racist views regarding teammates of the minor child.

31. The parties are capable of complying with the Court's Order.

32. The parties are fit and proper persons to have the custodial roles contained herein.

33. The parties do not communicate well and have not shown the ability to co-parent together.

The trial court granted Mother sole legal and primary physical custody of the child and granted Father visitation every other weekend starting on 19 May 2023,

from Friday after school until Sunday at 3:00 p.m., with custodial exchanges to occur either at school or at Time Together, a supervised visitation facility. Because "the minor child has not seen Father for a substantial period of time," his visitation was phased in with a series of four visits of three hours each, starting on 25 March 2023. The Order allowed each party telephone contact with the child for at least 10-15 minutes once a week if the child was in the care of the other for at least seven days, with the time to be agreed by use of Our Family Wizard or at 7:30 p.m. on Wednesdays if the parties did not agree. The parties were to use Our Family Wizard to communicate and inform the other of the child's extracurricular activities.

On 16 June 2023, Mother filed a motion to appoint a parenting coordinator. In her motion, Mother alleged that the parties "are in a high conflict case and continue to have ongoing disputes since the entry of the Permanent Custody Order on this matter. The Father has filed numerous Motion's (sic) for Contempt and Mother wishes to reciprocate with her own Motion's (sic) due to the ongoing conflicts."[5] She also alleged that "without the appointment of a Parenting Coordinator, the parties will remain in conflict and will continue to use the court's limited resources and time to address pending issues. She alleged that "a parenting coordinator would be able

---

[5] We note that our record does not include any motions filed by Father to hold Mother in contempt *before* the Motion for appointment of Parenting Coordinator, but Father's motion for Sanctions alleges that he had "filed 3 Motions for an Order to Show cause since the entry of the parties' March 28, 2023 Order regarding custody" and an Order to show cause had been issued for each one. Father testified that he had filed contempt motions against Mother at least three times before her motion for parenting coordinator was filed, on 25 April 2023, 17 May 2023, and 12 June 2023.

to diffuse (sic) issues between the parties and without one, the parties would not be able to move forward in any positive way without involving the court.

In response, on 20 July 2023, Father filed a motion for sanctions and attorney's fees, alleging that Mother made her motion for a parenting coordinator in retaliation against Father and in bad faith. Father also made allegations about Mother's counsel's communications with him to find out if he would consent or object to the appointment of a parenting coordinator before filing the motion. He objected, but Mother then sent in a calendar request for the hearing "without consulting with [Father's] counsel regarding the date requested" but Mother's counsel had failed to note on the request that Plaintiff's counsel objected to the date requested. Father's motion also alleged that

> 10. In Defendant's Motion for a Parenting Coordinator, Defendant indicated that she was only filing her motion as retaliation for Plaintiff's Show Cause Motions against her.
> 11. Defendant's Motion was made in bad faith.
> 12. Furthermore, the "pending issues" as stated in the Defendant's Motion are solely linked to the Defendant's continual violations of the Court's Permanent Custody Order . . . .
> 13. That upon information and belief, Defendant's motion is nothing more than an attempt to stop Plaintiff from exercising visitation with his son and an excuse for continuing to violate this Court's Custody Order.

He further alleged Mother had failed "to comply with the rules" and that her failure had caused him to incur attorney's fees and other costs. He requested that the court deny Mother's motion for parenting coordinator, sanction Mother "and/or

her attorney for intentionally deceiving the Court" and for "willfully falsifying information on the Calendar Request." Father then filed another motion for contempt on 11 August 2023 against Mother, alleging Mother interfered with Father's scheduled visitation, interrupted Father's scheduled phone call with T.R., and deprived Father of his custodial time with T.R.

Between 11 August 2023 and 20 October 2023, Father filed three motions for an order to show cause for why Mother should not be held in contempt for not complying with the custody order. In these motions, Father specifically alleged that Mother was interfering with Father's scheduled visitation with T.R. and interfering with his ability to communicate with T.R. During this same time period, on 28 September 2023, Father also filed a "motion to disqualify" Mother's counsel, alleging that he had "initiated a bar complaint against" Mother's counsel and that Mother's counsel had "offered to represent people who have claims against Father for reduced or discounted prices as retaliation for Father's filing a bar complaint against him."[6]

On 1 December 2023, Father filed a motion to modify the custody order, arguing that there was a substantial change in circumstances between the parties. Father specifically alleged that he had only seen the child two out of the sixteen scheduled visits due to Mother's interference and Mother had also interfered with

---

[6] Our record does not show any court ruling on this motion, but Mother's counsel continued to represent her at the hearing in December 2023. Mother is represented by different counsel on appeal.

Father's calls with T.R.

On 11 December 2023, the trial court held a hearing on Mother's motion to appoint a parenting coordinator and Father's motion for sanctions; on the same day the trial court entered an ordered titled "Order for Sanctions/Order Regarding Motion for Appointment of Parenting Coordinator." The trial court specifically made the following findings of fact:

> 9. Mother put in her Motion for appointment of a parenting coordinator "The Father has filed numerous Motions for Contempt and Mother wishes to reciprocate with her own Motion due to the ongoing conflict."
>
> 10. The Court finds that the Motion for the Parenting Coordinator was made for an improper purpose to retaliate, rather than for the purpose of enabling the parties to parent under the current custody order.
>
> 11. Although the Court finds that parenting coordinator's (sic) are able to assist in a lot of cases, the Court does not believe it will assist in this case, due to the primary source of conflict being the allegations of failure to follow the Order.
>
> 12. If the Order of a Court is not sufficient to cause parties to follow an Order, the Court fails to see how a directive of a parenting coordinator would cause the parties to follow an Order.
>
> 13. Mother has admitted that she picks up the minor child from school, to prevent Father from exercising his custody.
>
> 14. Mother testified she did that because she doesn't believe the minor child desires to participate in custody with Father.
>
> 15. Father testified that on the rare occasion he has been

able to exercise custody, he and the minor child had fun.

> 16. Mother is aware that she has a duty to follow the Court Order.
>
> 17. The Court finds that the Motion for Appointment of a Parenting Coordinator was in fact done for the purpose it stated in retaliation to Father's Motions to Show Cause, and not for a good faith purpose, and therefore the Court believes Father should be sanctioned.
>
> 18. Mother incurred attorney's fees defending the Motion for Appointment of a Parenting Coordinator.

The trial court made conclusions of law regarding its jurisdiction and then concluded that:

> 3. The Motion for Appointment of a Parenting Coordinator was filed in retaliation in bad faith.
>
> 4. Any finding of fact that should be included as a Conclusion of Law is incorporated herein as if set forth in full.

The trial court then ordered:

> 1. That the Motion for Appointment of a Parenting Coordinator is denied.
> 2. The Motion for Sanctions is granted.
> 3. It is Ordered that Mother pay Father $1969.44 within 30 days of entry of this Order as a Sanction for filing the Motion for Parenting Coordinator in bad faith.

Following this order, the trial court also issued an order for civil contempt against Mother on 18 December 2023, finding that Mother willfully violated the custody order. To purge her contempt, Mother was ordered to drop the minor child off at the Raleigh Police Department at noon on 25 December 2023 and 31 December

so Father could visit with the child for 2 hours at a "close by location" and then return him to the Raleigh Police Department to return to Mother.

Mother timely filed notice of appeal from the Order for Sanctions/Order Regarding Motion for Appointment of Parenting Coordinator and the Contempt Order on 9 January 2024.

## II.     Discussion

On appeal, Mother argues the trial court erred in: (1) denying her motion for appointment of a parenting coordinator and (2) granting Father's motion for sanctions against Mother.[7]

### A.     Motion for Appointment of a Parenting Coordinator

Mother argues the trial court erred in denying her motion for appointment of a parenting coordinator. Mother first argues the trial court failed to make findings of fact required under N.C.G.S. § 50-91(b) in making its determination. Although we reject Mother's contention that N.C.G.S. §50-91(b) requires specific findings of fact in an order *denying* appointment of a parenting coordinator, we note that an order of any type must include sufficient findings of fact to allow appellate review and to support a trial court's conclusions of law and decree. *See* N.C.G.S. § 1A-1, 52. We

---

[7] Mother did not raise any argument regarding the contempt order on appeal and stated in her brief that "subsequent to the filing of the Notice of Appeal, the trial Court has issued an Order which would render the appeal of that issue moot." We also note that at the conclusion of the hearing on 18 December 2023, the trial court also rendered an order holding Father in contempt of the Custody Order based upon Mother's motion for contempt filed 28 July 2023 for failure to inform her that he had moved to Wilmington.

also note that the trial court did not make separate conclusions of law addressing the denial of the motion for appointment of parenting coordinator and granting the motion for sanctions under Rule 11. The sole conclusion of law addressing the motion for appointment of parenting coordinator is "The Motion for Appointment of a Parenting Coordinator was filed in retaliation in bad faith," but bad faith is the basis for the Rule 11 sanctions. Thus, the trial court both denied the motion for appointment of parenting coordinator *and* granted sanctions based upon Mother's "bad faith" in filing her motion. The Order is therefore a hybrid of an order imposing Rule 11 sanctions and an order denying appointment of a parenting coordinator, but based on the trial court's conclusion of law, it is predominantly an order ruling on Father's motion for sanctions under Rule 11. Since the primary effect of the Order is as an order for sanctions under Rule 11, we must review the trial court's decision to impose sanctions de novo, and if the court properly granted sanction, we review the "appropriateness of the sanction imposed," including the denial of the motion for parenting coordinator, for abuse of discretion. The standards of review for an order granting or denying a motion to impose sanctions under N.C.G.S. § 1A–1, Rule 11(a) has been established by our Supreme Court:

> The trial court's decision to impose or not to impose mandatory sanctions under N.C.G.S. § 1A–1, Rule 11(a) is reviewable de novo as a legal issue. In the de novo review, the appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether

the findings of fact are supported by a sufficiency of the evidence. If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions under N.C.G.S. § 1A–1, Rule 11(a).

Finally, in reviewing the appropriateness of the particular sanction imposed, an "abuse of discretion" standard is proper because "[t]he rule's provision that the court 'shall impose' sanctions for motions abuses . . . concentrates [the court's] discretion on the selection of an appropriate sanction rather than on the decision to impose sanctions." *Turner v. Duke Univ.*, 325 N.C. 152, 165 (1989) (quoting *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174 (D.C. Cir. 1985)).

Although N.C.G.S. § 50-91(b) does not require any specific findings of fact for the trial court's denial of a motion for appointment of a parenting coordinator, under Rule 52 of the Rules of Civil Procedure, in "all actions tried upon the facts without a jury," the trial court is required to "find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C.G.S. § 1A-1, 52. Therefore, the trial court must make any findings of fact and conclusions of law necessary to address the motions or claims the order addresses. Here, the Order addressed *both* the denial of the parenting coordinator and the imposition of sanctions under Rule 11. Although the titles assigned in the order are not controlling, "Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law." *Woodard v. Mordecai*, 234 N.C. 463, 472 (1951).

In order to appoint a parenting coordinator,

the court shall make specific findings that the action is a high-conflict case, that the appointment of the parenting coordinator is in the best interests of any minor child in the case, and that the parties are able to pay for the cost of the parenting coordinator. The court does not have to find a substantial change of circumstance occurred to appoint a parenting coordinator.

N.C.G.S. § 50-91(b).  N.C.G.S. §50-90(1) defines a "high-conflict case" as:

[a] child custody action involving minor children brought under Article 1 of this Chapter where the parties demonstrate an ongoing pattern of *any* of the following:

a. Excessive litigation.
b. Anger and distrust.
c. Verbal abuse.
d. Physical aggression or threats of physical aggression.
e. Difficulty communicating about and cooperating in the care of the minor children.
f. Conditions that in the discretion of the court warrant the appointment of a parenting coordinator.

N.C.G.S. § 50-90(1).

Rule 11(a) sets out the basis for imposition of sanctions for filing a motion or other pleading:

Appellate review of sanctions under Rule 11 consists of a three-pronged analysis:  (1) factual sufficiency, (2) legal sufficiency, and (3) improper purpose.  A violation of any one of these prongs requires the imposition of sanctions. For each prong, the trial court must make findings of fact and conclusions of law.

*Jonna v. Yaramada*, 273 N.C. App. 93, 109 (2020) (citations and internal quotation marks omitted).

To assess the sufficiency of the factual basis of a pleading, this Court must

- 14 -

determine "(1) whether the plaintiff undertook a reasonable inquiry into the facts and (2) whether the plaintiff, after reviewing the results of his inquiry, reasonably believed that his position was well grounded in fact." *In re Thompson*, 232 N.C. App. 224, 230 (2014) (citation omitted).

An appraisal of the legal sufficiency of a pleading requires that we look "first to the facial plausibility of the pleading and only then, if the pleading is implausible under existing law, to the issue of whether to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, the complaint was warranted by the existing law." *Bryson v. Sullivan*, 330 N.C. 644, 661 (1992) (citation and internal quotation marks omitted).

Lastly, to evaluate the improper purpose prong, we must review the evidence to ascertain whether the pleading was filed for "any purpose other than one to vindicate rights . . . or to put claims of right to a proper test." *Mack v. Moore*, 107 N.C. App. 87, 93 (1992) (citation and internal quotation marks omitted). "It must be noted, however, that 'just because a plaintiff is eventually unsuccessful in [his] claim, does not mean the claim was inappropriate or unreasonable.'" *Jonna*, 273 N.C. App. at 110 (quoting *Grover v. Norris*, 137 N.C. App. 487, 495 (2000)).

Here, the trial court made several findings of fact and the findings of fact are not challenged as unsupported by the record, so they are binding on appeal. *Scoggin v. Scoggin*, 250 N.C. App. 115, 118 (2016) ("In a child custody case, the trial court's findings of fact are conclusive on appeal if supported by substantial evidence . . . .

Unchallenged findings of fact are binding on appeal") (citations omitted). Instead, the findings of fact indicate that Mother did have a factual basis to filed a motion for parenting coordinator and there was no dispute at the hearing about the legal sufficiency of the motion under N.C.G.S. § 50-91. The only potential basis for imposition of Rule 11 sanctions in this case was that Mother filed the motion for an "improper purpose." *Id.*

Mother was represented by counsel when she filed the Motion for appointment of parenting coordinator. We note that the trial court did *not* find, as Father's motion for sanctions alleged, that in filing the Motion for appointment of parenting coordinator Mother or her counsel had failed to "comply with the rules," intentionally deceived the Court, or "willfully falsif[ied] information on the Calendar Request." Instead, the findings address only mother's "bad faith."

In *Jonna v. Yaramada*, this Court addressed a Rule 11 sanctions order imposed in a similarly contentious custody and child support case for "allegedly improper motions interposed in a domestic matter." We noted that

> Absent an improper motive, Rule 11 sanctions should not be assessed against a client who relies in good faith on the advice of counsel:
>
> It is the rare client who understands the strategy and tactics of domestic litigation, as it is practiced in District Court. The defendant asks us to impute the knowledge of the effects of these motions to the attorney's client, the plaintiff. It is more likely the attorney prepared the affidavit for his client and she signed it on advice of counsel . . . . *Without a specific finding from the court*

> *which shows the plaintiff had knowledge of the effect of signing the motion would have on court proceedings and took this action to gain some temporary tactical advantage, we are unpersuaded that a signature alone would support Rule 11 sanctions against a client acting on an attorney's advice.*

*Jonna*, 273 N.C. App. at 112 (emphasis added, cleaned up). This court then addressed the definition of an "improper purpose" as this term has been interpreted for purposes of Rule 11:

> An improper purpose is any purpose other than one to vindicate rights or to put claims of right to a proper test. Our Supreme Court has determined that parties, as well as attorneys, may be subject to sanctions for violations of the improper purpose prong of Rule 11. A represented party . . . will be held responsible if his evident purpose is to harass, persecute, otherwise vex his opponents, or cause them unnecessary cost or delay.
>
> The existence of an improper purpose is determined from the totality of the circumstances. The relevant inquiry is whether the existence of an improper purpose may be inferred from the alleged offender's objective behavior. The burden is on the movant to prove, by a preponderance of the evidence, that the pleading has been interposed for an improper purpose.

*Id.* at 113 (cleaned up).

In *Jonna,* Defendant-Mother asserted that Plaintiff-Father filed the pro se motion, and later the Rule 59 and amended Rule 59 motions, because he was "merely upset with the [trial c]ourt's decision[.]" *Id.* The Court noted that this, standing alone, does not constitute an improper purpose, and that "it is likely that at least one party in any custody trial, if not both, will be unhappy with the trial court's

decision[,]" which may lead to a Rule 59 motion. *Id.* (citations omitted). The Court reversed that portion of the order imposing sanctions because the defendant-mother "offered no evidence to the trial court that Plaintiff-Father interposed his motions to gain some temporary tactical advantage, to cause unnecessary expense or delay, or to advance some other improper motive[,]" further noting that the purpose of the motions "was to get more evidence before the trial court and obtain equally shared physical custody of the parties' minor child, rather than to personally or financially injure Defendant-Mother or to delay the proceedings." *Id.* (citations and internal quotation marks omitted).

Here, there are no findings indicating that Mother's Motion for appointment of parenting coordinator was filed "to gain some temporary tactical advantage, to cause unnecessary expense or delay, or to advance some other improper motive." Instead, the findings demonstrate the high conflict which has characterized this case since its inception. The trial court's order relied heavily on the use of the words in Mother's motion that she "wishes to reciprocate" in response to Father's motions for contempt against her. Although this was perhaps a poor choice of words for the motion, otherwise the Motion clearly states the factual and legal basis for appointment of parenting coordinator, and there was no real dispute about either. But the trial court's order did not directly address the motion for parenting coordinator; it focused primarily on the motion for sanctions against Mother for filing the motion.

The order did not include any findings or conclusion of law that the case is or

is not a "high conflict" case or about the best interest of the child or how the ongoing conflict between the parties affects (or does not affect) the child. Instead, the trial court focused on the Rule 11 sanction issue and Mother's motivation, or at least one element of her motivation, for filing the motion for parenting coordinator: that she filed the motion in response, or retaliation, to Father's several pending motions, and the trial court's conclusion of law supporting both sanctions and the denial of the motion for parenting coordinator was Mother's "bad faith."

Overall, the findings of fact, along with the history of "excessive litigation" and the custody order which sets out the custodial arrangement tend to demonstrate that the parties have clearly been engaged in a high- conflict case, regardless of what motivated Mother to file the motion for a parenting coordinator. The findings in the Custody Order and the Order denying the motion for parenting coordinator demonstrate that this case has all the elements of a "high-conflict case": excessive litigation, anger and distrust, verbal abuse, physical aggression or threats of physical aggression, and difficulty communicating about and cooperating in the care of the minor child. N.C.G.S. § 50-90. And at the hearing, counsel for both parties acknowledged that this is a high conflict case.[8]

The trial court noted that there had been excessive litigation in the case, finding that "[t]his is a case where there have been multiple show causes filed[]" and

---

[8] Father's counsel told the trial court, "Yes, it's a high-conflict case. I could not stand in front of you with a straight face and say that this is not a high-conflict case."

"[t]he largest percentage of the show cause motions stem from the allegations that Mother is not allowing Father to have his court Ordered visitation." However, the trial court did not make a finding or conclusion as to whether this case is a "high-conflict case" as defined by N.C.G.S. § 50-90.

Very few cases have addressed orders *denying* appointment of a parenting coordinator, so it is not clear whether the designation of a "high-conflict case" is a finding of fact or a conclusion of law. N.C.G.S. § 50-91 refers to this as a "finding," but at least one case has addressed it as a conclusion of law. *See Jackson v. Jackson*, 192 N.C. App. 455, 465 (2008) ("On these findings, the trial court *concluded* "[t]his case is a high-conflict case. The parties are able to pay for a Parenting Coordinator and the appointment of a Parenting Coordinator is in [the minor child's] best interest as set forth in G.S. 50–91(b).")

Since a conclusion of law is reached "by an application of fixed rules of law," *Woodard*, 234 N.C. at 472, and N.C.G.S. § 50-90 provides the statutory definition of a "high conflict case," the determination that a case is a "high conflict case" requires both findings of fact and "application of the fixed rules of law" of the definition N.C.G.S. § 50-90 to those facts. Of course, the trial court would still have discretion not to appoint a parenting coordinator, even if it concludes that a case is a high conflict case, but the trial court's order would need to address why the parenting coordinator would not be in the best interest of the child, assuming the parties also have the ability to pay a parenting coordinator.

Here, the trial court found that although "parenting coordinators are able to assist in a lot of cases, the Court does not believe it will assist in this case, due to the primary source of conflict being the allegations of failure to follow the Order." However, in many cases addressing the appointment of a parenting coordinator, the parties' failures to follow orders or allegations of failures to follow orders create the "excessive litigation" that is part of the definition of a "high conflict" case. Holding a party in contempt may assist in resolving some of the conflict in a high conflict case, but if a mere contempt order were sufficient to quell years of conflict in "high conflict" cases as defined by N.C.G.S. § 50-90, there would rarely be a basis for appointment of a parenting coordinator in any case. And in this case, prior contempt orders had not yet ended the conflict between the parties.

Of more concern for the purposes of § 50-91, the trial court made no findings about the best interests of the child but simply denied the motion to appoint a parenting coordinator and sanctioned Mother for filing the motion, despite making findings about the conflicts between the parties. Finally, the trial court made no findings related to the parties' financial abilities to pay for a parenting coordinator, although Mother stated at the hearing that she was willing and able to pay for the parenting coordinator.

Again, we recognize that N.C.G.S. § 50-91 does not require any particular findings of fact in an order *denying* a motion for a parenting coordinator. This Court previously confronted this question in *Thomas v. Thomas*, 233 N.C. App. 736 (2014).

In *Thomas*, this Court stated,

> [o]ur review reveals that N.C. Gen. Stat. § 50–91 governs what findings must be made *only* if the trial court, in its discretion, *appoints* a parenting coordinator. In the case before us, the trial court did not appoint a parenting coordinator and Mother does not cite to any authority, nor can we find any, imposing an affirmative duty on the trial court to require parties to produce evidence of their ability to pay for a parenting coordinator if one is not appointed.

*Id.* at 747.

However, there are several key distinctions between *Thomas* and the facts of this case, even beyond the fact that the order here is a hybrid with a Rule 11 sanctions. First, in *Thomas*, the trial court did specifically find that it was a high-conflict case and appointing a parenting coordinator would be in the best interest of the child. *Id.* However, the trial court stated that "there was insufficient evidence concerning the parties' present ability to pay a parenting coordinator." *Id.* In making this determination, this Court specifically noted that the unchallenged findings of fact suggested the parties more than likely lacked the ability to pay for a coordinator due to Father owing attorney's fees in excess of $70,000.00 and Mother owing attorney's fees in excess of $90,000.00. *Id.* Thus, this Court affirmed the trial court's dismissal of the motion to appoint a parenting coordinator because evidence tended to suggest the parties would not have been able to afford one. *Id.*

But here, the trial court made findings of fact, and these findings tend to support the appointment of a parenting coordinator, not the denial of the motion, and

the trial court seemingly denied the motion as a part of the sanction under Rule 11. First, the trial court did not make any specific finding or conclusion that this is or is not a high-conflict case, but it did make findings that would lead directly to a conclusion of law that the case is a high conflict case as defined in N.C.G.S. § 50-90. Also, counsel for both parties agreed this is a high conflict case. Furthermore, the trial court did not make any findings regarding the best interest of the child. Where the findings of fact demonstrate this is a high conflict case, and there is no mention of the best interest of the child in the order, we are unable to discern why the trial court not only denied the motion for parenting coordinator but also imposed sanctions under Rule 11 just for requesting a parenting coordinator. And even if the trial court determined in its discretion that a parenting coordinator should not be appointed, this does not necessarily mean that Father's motion for sanctions must be allowed. "It must be noted, however, that 'just because a plaintiff is eventually unsuccessful in [his] claim, does not mean the claim was inappropriate or unreasonable.' " *Jonna*, 273 N.C. App. at 110 (quoting *Grover v. Norris*, 137 N.C. App. 487, 495 (2000)).

Finally, there was evidence presented by Mother at trial that she would be able to afford a parenting coordinator. During trial, Mother stated she already paid for T.R.'s therapy and she would be able to afford a parenting coordinator between her and her fiancé's incomes. Additionally, the only evidence that Father provided to rebut this point was the Mother had not been able to file motions to show cause of her

own against Father through her attorney.[9]   However, there was no other evidence presented that directly or specifically addressed Father or Mother's inability to afford a parenting coordinator, like there was for the parties in *Thomas*.   In any event, Mother testified that she would pay for the parenting coordinator's services.

The trial court based its decision both to deny the parenting coordinator and to grant sanctions under Rule 11 primarily on the fact that the motion was made in retaliation for Father's contempt filings.   In addition, it states that one of the causes of the conflict was Mother's failure to follow the previous order.   That the motion was filed in response to motions for contempt also seems to support rather than detract from the need for a parenting coordinator.

In all custody cases, the best interest of the child should serve as the lodestar for the court's decisions.   *See Respess v. Respess*, 232 N.C. App. 611, 615 (2014) ("It is long-established that a trial court's determination of child custody . . . must be guided by the best interests of the child[.]")  In the present case, based upon the findings that were made even more than those that were missing, it appears the trial court was viewing a need to punish Mother for her actions regarding the previous order rather than a reasoned decision of whether a parenting coordinator would serve as a means of reducing the conflict between the parents thereby benefiting the child at issue, whose wellbeing should be the primary focus.   As an aside, the appointment of a

---

[9] But Mother was represented by counsel this hearing and was represented by counsel throughout most of this case, including the filing of the motion for appointment of a parenting coordinator.

parenting coordinator does not lessen the trial court's ability to punish the Mother for previous contemptuous acts, as it surely did by requiring her to take T.R., age 8, to the Raleigh Police Department on both Christmas day and New Year's Eve to visit with Father for two hours.[10] We also note that the trial court could tax the entire cost of the parenting coordinator to the Mother if the court finds that she is the primary cause for the need for the coordinator.

Accordingly, the trial court's findings of fact do not support its conclusion of law to deny the parenting coordinator and granting Rule 11 sanctions based on Mother's filing the motion to appoint a parenting coordinator. In addition, the findings of fact would support a conclusion that this is a "high conflict" case in which the trial court has the discretion to appoint a parenting coordinator, but the trial court did not make any findings or conclusions regarding the child's best interests. We therefore vacate the order denying the appointment of a parenting coordinator and awarding sanctions under Rule 11 and remand for entry of a new order. Although the trial court is not required on remand to allow the motion for parenting coordinator and the trial court may decide again to impose Rule 11 sanctions, whatever the decisions on remand are, the trial court must make findings of fact and conclusions of law to support both the ruling on the motion for parenting coordinator and the

---

[10] But we caution that punishment is the purpose of a show cause order for criminal contempt. For civil contempt, the purpose of the order is not to punish but to enforce compliance with the court's order.

ruling on the motion for sanctions under Rule 11, since these two motions present different legal issues.

## II.     Conclusion

For the foregoing reasons, we vacate the order and remand to the trial court for actions consistent with this opinion.

VACATED AND REMANDED.

Judge STROUD concurs.

Judge FREEMAN concurs in the result only.