NO. COA13-655

NORTH CAROLINA COURT OF APPEALS

Filed:  6 May 2014

JOEL W. THOMAS,
    Plaintiff,

    v.                              Wake County
                                    No. 10 CVD 17772

HERLENE THOMAS,
    Defendant.


Appeal by defendant from order entered 17 December 2012 by Judge Debra S. Sasser in Wake County District Court.  Heard in the Court of Appeals 6 January 2014.


> *Gailor, Hunt, Jenkins, Davis, & Taylor, P.L.L.C., by Cathy C. Hunt and Jonathan S. Melton, for plaintiff-appellee.*

> *Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Tobias S. Hampson, for defendant-appellant.*


McCULLOUGH, Judge.


Defendant Herlene Thomas seeks review of a child custody order, granting plaintiff Joel W. Thomas and defendant joint legal custody, granting plaintiff primary physical custody, and granting defendant secondary physical custody of their minor child.  For the reasons stated herein, we affirm the order of the trial court.

## I.   Background

Plaintiff Joel W. Thomas and defendant Herlene Thomas were married on 31 August 2001 and divorced on 31 July 2007. One child was born of their marriage in 2004 (hereinafter "minor child").

The parties' first custody order was entered in California on 27 April 2006 ("the 2006 Order") and a second, supplementary order was entered in California on 18 July 2007 ("the 2007 Order"). Both orders were registered in North Carolina on 21 October 2010 and 19 May 2011, respectively.

On 14 July 2011, plaintiff filed a "Motion to Modify Custody Order, Motion for Psychological Evaluation and Motion for Custody Evaluation Pursuant to N.C. Gen. Stat. § 50-13.1 et seq.; Rule 35." Plaintiff alleged that since the entry of the 2006 Order, defendant had "refused to facilitate the minor child's visitation with Plaintiff," resulting in a substantial change in circumstances affecting the best interest and welfare of the minor child. Furthermore, plaintiff alleged that "[d]efendant has shown an unwillingness to take reasonable measures to foster a feeling of affection between the minor child and Plaintiff and not to estrange the child from Plaintiff or impair the [minor] child's regard for Plaintiff."

On 10 October 2011, the trial court entered an "Order For Custody Evaluation And Clarification of Existing Child Custody

Order." The trial court found that "[g]iven the currently [SIC] level of acrimony between the parties, the Court finds that a good cause exists for ordering a custody evaluation."

On 14 November 2011, defendant filed a "Motion to Modify Custody; Motion for Contempt; Motion in the Cause for Attorney's Fees; Motion to Appoint Parenting Coordinator." Defendant argued that since the 2006 Order, a substantial change in circumstances affecting the welfare of the minor child had occurred and that modification of custody served the minor child's best interest. Defendant alleged, *inter alia*, that plaintiff fails to communicate with defendant in a collaborative way that promotes the best interest of the minor child, plaintiff makes false or empty promises to the minor child, plaintiff and his current wife demean and disparage defendant in the presence of the minor child, and that the terms of the 2006 Order and the 2007 Order were "vague, ambiguous, confusing, and did not serve the minor child's best interest[.]"

Following a hearing held from 11 until 17 October 2012 on each party's motion to modify custody and several other motions filed by both parties, the trial court entered a custody order on 17 December 2012. The custody order included 226 findings of fact. The trial court concluded that there had been a substantial change in circumstances affecting the minor child,

warranting a modification of the 2006 and 2007 Orders. The trial court further concluded that it would be in the best interest of the minor child and would best promote the interest and general welfare of the minor child if the parties had joint legal custody, with plaintiff "having final decision making authority if the parties are unable to timely agree as to a decision, and with [p]laintiff exercising primary physical custody of the minor child, and with [d]efendant exercising secondary physical custody[.]"

Defendant appeals.

## II.  Standard of Review

> In a child custody case, the trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Unchallenged findings of fact are binding on appeal. The trial court's conclusions of law must be supported by adequate findings of fact.

*Peters v. Pennington*, 210 N.C. App. 1, 12-13, 707 S.E.2d 724, 733 (2011) (citations omitted).

"The trial court is vested with broad discretion in child custody cases, and thus, the trial court's order should not be set aside absent an abuse of discretion." *Dixon v. Gordon*, __ N.C. App. __, __, 734 S.E.2d 299, 304 (2012) (citation omitted).

## III. <u>Discussion</u>

Defendant presents the following issues on appeal: whether the trial court (A) failed to make sufficient findings of fact to support its conclusion of law that a substantial change in circumstances had occurred; (B) erred in concluding that it was in the best interest of the minor child to modify custody; and (C) erred in denying the motion to appoint a parenting coordinator.

### A.    <u>Substantial Change in Circumstances</u>

Defendant argues that the trial court erred by failing to make sufficient findings of fact to support its conclusion of law that there had been substantial change in circumstances affecting the minor child, thereby warranting a modification of the 2006 and 2007 California custody orders.  Specifically, defendant contends that (i) the parties' stipulation to a substantial change in circumstances was invalid and ineffective, and (ii) the trial court failed to make specific findings about what circumstances had changed and what effect, if any, such changed circumstances had on the minor child.  We address each argument in turn.

### i.   <u>Stipulation as to "Substantial Change in Circumstances"</u>

Defendant argues that the trial court erred by making the following finding of fact:  "[t]he parties stipulate that there

has been a substantial change of circumstances since entry of the California Orders for custody on April 27, 2006 and July 18, 2007."

At the beginning of the hearing, the following exchange occurred:

> THE COURT: All right. Thank you. Um, before we get started, since each party has a Motion to Modified [sic] Custody on the calendar, are you interested in just having a stipulation that there has been a substantial change in circumstances that would warrant a modification, such that I can focus my energies on best interests as opposed to, um, keeping tabs on whether there's evidence of a substantial change?
>
> [Plaintiff:] We would stipulate to that, Your Honor.
>
> [Defendant:] Uh, yes, Your Honor, I think it's clear.
>
> THE COURT: All right. All right. And I'm certain we'll identify what those changes are.

It is well established that a "determination of whether changed circumstances exist is a conclusion of law." *Head v. Mosier*, 197 N.C. App. 328, 334, 677 S.E.2d 191, 196 (2009) (citing *Brooker v. Brooker*, 133 N.C. App. 285, 289, 515 S.E.2d 234, 237 (1999)). Our Court has held that "[s]tipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate." *In*

*re A.K.D.*, __ N.C. App. __, __, 745 S.E.2d 7, 9 (2013) (citation omitted).

Based on the foregoing, we agree with defendant's contention that the parties' stipulation as to a substantial change in circumstances was invalid and ineffective.

ii.  <u>Findings to Support a Substantial Change in Circumstances</u>

Next, defendant argues that the trial court failed to make sufficient findings of fact to support its conclusion that "[t]here has been a substantial change in circumstances affecting the minor child which warrants a modification of the 2006 and 2007 California Custody Orders."  We are not persuaded by defendant's arguments.

"It is well established in this jurisdiction that a trial court may order a modification of an existing child custody order between two natural parents if the party moving for modification shows that a 'substantial change of circumstances affecting the welfare of the child' warrants a change in custody."  *Shipman v. Shipman*, 357 N.C. 471, 473, 586 S.E.2d 250, 253 (2003) (citations omitted).  The modification of a custody decree must be supported by findings of fact reflecting the fulfillment of this burden.  *See Tucker v. Tucker*, 288 N.C. 81, 87, 216 S.E.2d 1, 5 (1975). "[T]he evidence must demonstrate a connection between the substantial change in circumstances and

the welfare of the child, and flowing from that prerequisite is the requirement that the trial court make findings of fact regarding that connection." *Shipman*, 357 N.C. at 478, 586 S.E.2d at 255 (citation omitted).

> In determining whether a substantial change in circumstances has occurred[, c]ourts must consider and weigh all evidence of changed circumstances which effect or will affect the best interests of the child, both changed circumstances which will have salutary effects upon a child and those which will have adverse effects upon the child.

*Hibshman v. Hibshman*, 212 N.C. App. 113, 121, 710 S.E.2d 438, 443 (2011) (citations and quotation marks omitted).

In the present case, the primary disputed issues regarding the minor child's welfare were plaintiff's allegation that defendant was refusing to facilitate the minor child's visitation with plaintiff, plaintiff's allegation that defendant was unwilling to take reasonable measures to foster a feeling of affection between the minor child and plaintiff, defendant's allegation that plaintiff failed to communicate with defendant in a collaborative way, defendant's allegations that plaintiff makes empty promises to the minor child and makes disparaging comments about defendant in the presence of the minor child, and defendant's allegation that the terms of the 2006 Order and the 2007 Order were confusing and ambiguous. Upon a review of the

226 unchallenged findings of fact made by the trial court, which are binding on appeal, we find that the trial court sufficiently resolved the issues at hand and demonstrated the existence of a substantial change in circumstances and its effect on the minor child, with those findings including the following:

78. For the most part, from 2006 until 2010, Defendant consulted with Plaintiff and kept Plaintiff informed about education and healthcare issues. Plaintiff did not question Defendant's decisions as to these issues, and he deferred to her about decisions in these areas.

79. However, after Plaintiff married Katrina [in November 2009], Defendant's ability to emotionally divorce herself from Plaintiff became a barrier in Plaintiff's attempts to communicate with [the minor child]. For the first few months following Plaintiff's marriage to Katrina, Plaintiff could not get in touch with [the minor child].

80. While the parties' relationship had been dysfunctional for years, Defendant's refusal to follow through on the Christmas 2009 visit with Plaintiff and Plaintiff's marriage to Katrina marked the beginning of a pattern of disruption in Plaintiff and the minor child's relationship.

. . . .

105. Following Social Services involvement with the family [in 2011], Defendant engaged in a pattern of vindictive behavior with Plaintiff.

106. On February 4, 2011, Defendant was willfully hours late in having [the minor child] available for pick-up, and her communication with Plaintiff about this was spiteful and vindictive. Due to Defendant's purposeful tardiness to the custody exchange, Plaintiff was unable to exercise visitation with the minor child.

107. On March 18, 2011, Plaintiff let Defendant know that he would be about 20 minutes late for a pick-up, but Defendant did not have [the minor child] there for a late pickup. Although Defendant told Plaintiff that she took [the minor child] to church, this was not true. Again, due to Defendant's behavior Plaintiff was unable to exercise visitation with the minor child.

. . . .

110. Defendant has called Katrina a "b**ch" in front of [the minor child] . . . . Defendant lets her negative feelings toward Katrina interfere with [the minor child's] relationship with Plaintiff and Katrina. . . .

. . . .

112. Defendant has created the situation for a hostile relationship between [the minor child] and Katrina.

. . . .

121. By the terms of the 2011 [Order for Custody Evaluation and Clarification of Existing Child Custody Order], the Court sought to reduce conflict between the parties, especially conflict in

front of the minor child.

. . . .

126. Despite the "clarifying" North Carolina custody order, Defendant continued to interfere with Plaintiff's custodial time with [the minor child] throughout 2012.

. . . .

137. Defendant has put a premium on the minor child's activities to the detriment of Plaintiff's relationship with the minor child. Defendant has used things such as a "pumpkin picking" trip at school as an excuse to limit Plaintiff's visitation with [the minor child]. She has conditioned visits, requiring Plaintiff to agree to take [the minor child] to work with him during a visit instead of [the minor child] being allowed to stay at Plaintiff's home with Katrina. . . .

. . . .

150. Defendant's interference with [the minor child's] contact with Plaintiff is having a detrimental impact on [the minor child] evidenced by the difficulties at custodial exchanges.

. . . .

155. Defendant either intentionally ignores the plain language of a Court Order or she is not capable of understanding plain language in a Court Order.

. . . .

196. [The minor child] can be very manipulative. He has likely developed

this personality trait as a response to the intense negative emotions that his mother feels toward his father and that his father feels toward his mother. He does not feel that he can express love for a parent except directly to that parent.

. . . .

199. Defendant has, either intentionally or inadvertently, engaged in conduct that is alienating [the minor child] from Plaintiff. . . .

. . . .

215. Defendant's feelings of hurt and anger toward Plaintiff interfere with her ability to effectively co-parent with Plaintiff. The level of acrimony between the parties has interfered in their ability to co-parent [the minor child].

These numerous findings illustrate the fact that since the entry of the 2006 Order and the 2007 Order, plaintiff's marriage to Katrina in 2009 has marked the beginning of a "pattern of disruptive behavior" by defendant involving the relationship between plaintiff and the minor child, significantly interfering with the parties' ability to co-parent, and detrimentally affecting the welfare of the minor child.

Accordingly, we hold that although the trial court's finding of fact regarding the parties' stipulation to a substantial change in circumstances was invalid and ineffective,

the trial court's findings of fact were adequate to support its conclusion of law that a substantial change in circumstances affecting the minor child warranted a modification of the 2006 Order and the 2007 Order.

### B. Best Interest of the Minor Child

Next, defendant challenges the trial court's conclusion of law number 6:

> 6. It is in the best interest of the minor child, and would best promote the interest and general welfare of the minor child, that the parties have joint legal custody, with Plaintiff having final decision making authority if the parties are unable to timely agree as to a decision, and with Plaintiff exercising primary physical custody of the minor child, and with Defendant exercising secondary physical custody with the minor child as set out hereinafter with more specificity.

Specifically, defendant argues that the foregoing conclusion of law is not supported by the findings of fact. We disagree.

Once the trial court concludes that there has been a substantial change in circumstances affecting the minor child "it may modify the order if the alteration is in the best interests of the child." *Peters*, 210 N.C. App. at 13, 707 S.E.2d at 734.

> [A] custody order is fatally defective where it fails to make detailed findings of fact from which an appellate court can determine

> that the order is in the best interest of the child, and custody orders are routinely vacated where the "findings of fact" consist of mere conclusory statements that the party being awarded custody is a fit and proper person to have custody and that it will be in the best interest of the child to award custody to that person. A custody order will also be vacated where the findings of fact are too meager to support the award.

*Carpenter v. Carpenter*, __ N.C. App. __, __, 737 S.E.2d 783, 787 (2013) (citing *Dixon v. Dixon*, 67 N.C. App. 73, 76-77, 312 S.E.2d 669, 672 (1984) (citations omitted)). Findings of fact "may concern physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare of the child." *Steele v. Steele*, 36 N.C. App. 601, 604, 244 S.E.2d 466, 468 (1978).

After thoroughly reviewing the trial court's 17 December 2012 Custody Order, we observe that the following pertinent findings of fact allow our Court to determine whether a change in custody is in the best interest of the minor child, and adequately support the trial court's conclusion of law number 6:

> 111. It would be in [the minor child's] best interest for Plaintiff, Defendant, and Katrina to positively co-parent [the minor child].
>
> . . . .
>
> 150. Defendant's interference with [the minor child's] contact with Plaintiff is having a detrimental impact on [the

minor child] as evidenced by the difficulties at custodial exchanges.

. . . .

154. Defendant is in need of therapy to address deep seated, long-term unresolved issues arising from her relationship with Plaintiff and her failure to emotionally divorce herself from this relationship, and it is in [the minor child's] best interest for Defendant to engage in such therapy.

. . . .

181. It would not be in [the minor child's] best interest for either parent to exit [the minor child's] life. However, neither is maintaining the status quo in [minor child's] best interest.

182. If [the minor child] were to live primarily with Plaintiff, [the minor child] would be moving to Suffolk, Virginia, where Plaintiff has lived since 2010. Plaintiff is established in this community and has an appropriate home for [the minor child]. [The minor child] is comfortable in this home. . . .

. . . .

184. If [the minor child] were to live primarily with Plaintiff, Katrina would assist with [the minor child's] care if Plaintiff was away for his military duties. Plaintiff's parents are also in close proximity to Plaintiff.

. . . .

188. Plaintiff would likely facilitate an ongoing relationship between [the minor

child] and Defendant, but the extent of Plaintiff's efforts would depend on whether Defendant was engaged in therapy.

. . . .

204. Plaintiff is the parent most likely to encourage and support a relationship between [minor child] and the other parent.

. . . .

207. If [the minor child] is left in Defendant's primary care, it is unlikely that the dynamics between Plaintiff and Defendant, between Defendant and Katrina, or between Plaintiff and [the minor child] will change, and it is possible that Plaintiff, in an effort to shield [the minor child] from the conflict, will sever his ties to [the minor child], which would likely be devastating to [the minor child's] emotional development. . . .

. . . .

216. Given the parties' dysfunctional relationship history and the current level of conflict between the parties, unless one parent is given final decision making authority on important issues, joint legal custody is not in [the minor child's] best interest in light of the risk of delay in making timely decisions[.]

Thus, we hold that the trial court's conclusion number 6 is based on findings that clearly illustrate that it would be in the best interest of the minor child for the parties to

successfully co-parent and that plaintiff is the party most likely to facilitate a relationship between the minor child and the other parent based on defendant's past interference with the minor child and plaintiff's relationship. Accordingly, we uphold the conclusion of the trial court.

### C. Motion to Appoint a Parenting Coordinator

In her last argument, defendant argues that the trial court erred by failing to appoint a parenting coordinator. Defendant's argument is based on the assumption that the trial court "had the responsibility to require the parties to produce evidence of their ability to pay a parenting coordinator if that would be in the best interests of the child." We disagree.

On 14 November 2011, defendant filed a motion to appoint a parenting coordinator arguing that the current custody action constituted a "high conflict" case pursuant to N.C. Gen. Stat. § 50-90(1), which defines a high-conflict case as:

> [a] child custody action involving minor children brought under Article 1 of this Chapter where the parties demonstrate an ongoing pattern of any of the following:
> a. Excessive litigation.
> b. Anger and distrust.
> c. Verbal abuse.
> d. Physical aggression or threats of physical aggression.
> e. Difficultly communicating about and cooperating in the care of the minor children.
> f. Conditions that in the discretion of the

> court warrant the appointment of a parenting coordinator.

N.C. Gen. Stat. § 50-90(1) (2013). Pursuant to section 50-91 of the North Carolina General Statutes, a parenting coordinator *may* be appointed only if

> the [trial] court . . . makes specific findings [1] that the action is a high-conflict case, [2] that the appointment of the parenting coordinator is in the best interests of any minor child in the case, and [3] that the parties are able to pay for the cost of the parenting coordinator.

N.C. Gen. Stat. § 50-91(b) (2013).

On 17 December 2012, the trial court denied defendant's motion, finding the following: "[t]his is a high conflict custody action. However, there was insufficient evidence concerning the parties' present ability to pay a parenting coordinator."

Our review reveals that N.C. Gen. Stat. § 50-91 governs what findings must be made *only* if the trial court, in its discretion, *appoints* a parenting coordinator. In the case before us, the trial court did not appoint a parenting coordinator and defendant does not cite to any authority, nor can we find any, imposing an affirmative duty on the trial court to require parties to produce evidence of their ability to pay for a parenting coordinator if one is not appointed.

Furthermore, unchallenged findings suggest that the parties more than likely lacked the ability to pay for a coordinator. Particularly, the trial court found that plaintiff had not been able to pay his attorneys' fees on his own and owed in excess of $70,000.00 toward his attorneys' fees. Defendant, unable to afford paying her legal fees, received funds from a church in excess of $90,000.00.

## IV.  Conclusion

Because we hold that the trial court made sufficient findings of fact to support its conclusions of law that a substantial change in circumstances had occurred, that modification of custody was in the best interest of the minor child, and that the trial court did not err by denying defendant's motion to appoint a parenting coordinator, we affirm the 17 December 2012 Custody Order of the trial court.

Affirmed.

Chief Judge MARTIN and Judge ERVIN concur.