IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-55

Filed 15 October 2025

Randolph County, No. 19CVD002693-750

JENNIFER BULLINS, Plaintiff,

v.

HAYLEY NICOLE RIDDLE, Intervenor,

v.

JUSTIN A. TURNER, Defendant.

Appeal by plaintiff mother from orders entered 11 September 2020, 27 June 2022, 28 March 2024, and 17 April 2024 by Judge Sarah N. Lanier in District Court, Randolph County. Heard in the Court of Appeals 14 August 2025.

*Hayes Law Offices, PLLC, by Mark L. Hayes, for plaintiff-appellant.*

*Megerian & Wells, by Margaret Jeanne Megerian, for intervenor-appellee.*

*No brief filed for Justin A. Turner, pro se defendant-appellee.*

ARROWOOD, Judge.

Jennifer Bullins ("mother") appeals from multiple orders, the final order dated 17 April 2024, permitting intervention by Haley Nicole Riddle ("intervenor") in mother's complaint for custody of juvenile K.B.[1] against Justin A. Turner ("father"), awarding joint legal and physical custody to mother and intervenor, awarding

---

[1] Initials are used to protect the identity of the juvenile.

primary legal and physical custody to intervenor, further modifying custody, and holding mother in criminal contempt for violating the custody order. For the following reasons, we affirm the final order in part, vacate it in part, and remand this matter to the trial court for additional findings of fact.

## I. Factual Background

Mother initiated this case with a complaint for child custody on 26 November 2019. In this complaint, she alleged that father had no interest in visitation with K.B., demonstrated a blatant disregard for K.B.'s best interests, and had requested that his rights be relinquished. On 9 December 2019, the trial court ordered mother have full legal and physical custody of K.B. and father's rights were extinguished.

On 31 July 2020, intervenor filed a motion seeking permission to intervene in the custody action and be given joint custody of K.B. She alleged that she was the former partner of mother and had been "a primary source of physical, financial, and emotional support for the minor child since birth." Intervenor stated that mother resided with her at the time K.B. was born and intervenor, with the agreement of mother, took on many of the parenting duties, such that mother "voluntarily ceded paramount decision-making authority over the minor child without creating an expectation that the relationship would be terminated." Mother left intervenor's home around 1 July 2020 and their relationship ended. Following a hearing on the motion, the trial court concluded intervenor had standing to intervene, and on

11 September 2020 awarded joint legal and physical custody to intervenor and mother, with intervenor given the majority of visitation days.

Three days later, intervenor filed a motion to modify custody and a motion for an ex parte custody order, alleging substantial changes to circumstances affecting K.B.'s welfare, based on the violent actions of mother and mother's romantic partner. On 20 October 2020, mother filed a motion requesting the court set aside the custody order on grounds of intervenor's misrepresentation and misconduct; she also filed a motion in the alternative to modify custody.

Following an order for temporary child custody and two amendments, the trial court addressed the merits of mother's motions on 15 June 2022. The trial court made 213 findings of fact, including that mother hit intervenor during and following their relationship, but that K.B. was never abused by either party, nor witnessed any domestic violence. The trial court gave full legal and physical custody to intervenor, and allowed mother to have visitation every other weekend, and every other Wednesday and Thursday. The court also incorporated a list of 13 Parenting Guidelines which it required the parties to follow. These guidelines permitted the parent who had K.B. to make minor routine decisions, required a free flow of information concerning health care providers and teachers, and set "ground rules" concerning the way the parties would interact with K.B. as to each other's parenting.

On 8 November 2023, intervenor filed a motion to modify custody and for an ex parte custody order. She alleged that "substantial and material changes in

circumstances" had occurred: (1) K.B. had been refusing to leave intervenor's car during visitation exchanges; (2) intervenor saw a man who had been arrested for felony controlled substance possession in mother's car; (3) K.B. told intervenor that this man had been staying with mother; (4) mother was harassing intervenor; (5) mother interfered with K.B.'s therapy; and (6) mother was expecting K.B. to hold Facetime conversations longer than were developmentally appropriate. Intervenor also alleged that mother had violated the custody order by: (1) enrolling K.B. in daycare without intervenor's knowledge or consent; (2) giving K.B. haircuts to which intervenor had not consented; and (3) keeping K.B. in an environment injurious to his welfare. Intervenor also alleged that K.B. had called her a "fake mamma" and made other statements that indicated he was hearing disparaging comments about intervenor while staying with mother. Intervenor requested the court grant her sole custody and hold mother in contempt.

The trial court conducted hearings on intervenor's motions on 31 January 2024 and 22 February 2024. On the issue of contempt, the trial court found that mother's enrollment of K.B. in daycare was a willful violation of the custody order, which had granted intervenor primary custody and required prompt communication concerning matters of education. Mother testified at the hearing that she had brought K.B. to the daycare where she worked eight to ten times, and that she was with him all day as he was one of the children she looked after at the daycare.

Regarding custody, the trial court found that both mother and intervenor stipulated to a change in circumstances affecting K.B., that there had been "a breakdown in communication between the parties" over major and minor decisions, and that these communications issues had affected K.B. such that he had difficulty transitioning between the parties' households. The trial court awarded intervenor tie-breaking authority in decision-making, and granted mother visitation every other weekend and every other Wednesday evening for an hour and a half, removing Thursday visitation. The trial court also sentenced mother to 30 days in jail, suspended the sentence, and placed her on 12 months of unsupervised probation. An amended order was filed 17 April 2024. Mother gave notice of appeal 8 May 2024.

## II.   Discussion

Mother raises four issues on appeal: (1) whether intervenor has standing to seek custody of K.B. under N.C.G.S. § 50-13.5(j); (2) whether the trial court erred in concluding that a substantial change in circumstances justified a modification of the custody order; (3) whether the trial court abused its discretion in creating the new visitation schedule; and (4) whether the trial court erred in holding mother in criminal contempt for violation of the custody order. We address each argument in turn.

### A.   Intervenor's Standing

"Standing implicates a court's subject matter jurisdiction and may be raised at any time, even on appeal." *Fish House, Inc. v. Clarke*, 204 N.C. App. 130, 136 (2010)

(citation omitted). Standing is a question of law, which we consider *de novo*. *Violette v. Town of Cornelius*, 283 N.C. App. 565, 569 (2022). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *In re G.C.*, 230 N.C. App. 511, 516 (2013) (citation omitted).

"Subject matter jurisdiction is a court's power to hear a specific type of action, and is conferred upon the courts by either the North Carolina Constitution or by statute." *Chavez v. Wadlington*, 261 N.C. App. 541, 544 (2018) (quotations and citation omitted). Standing permits a court to exercise subject matter jurisdiction. *Id*. The circumstances under which a person has standing to seek the custody of a child are contained in N.C.G.S. § 50-13 (2025). Most broadly, "[a]ny parent, relative, or other person, agency, organization or institution claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child . . . ." N.C.G.S. § 50-13.1(a).

However, this statute "does not convey an absolute right upon every person who allegedly has an interest in the child to assert custody." *Krauss v. Wayne County Dept. of Social Services*, 347 N.C. 371, 379 (1997). Rather, it must respect the constitutional rights of parents to raise their children. *Id.* In light of these limitations, to make "a claim for custody on [the basis of the child's best interest], the party seeking custody must allege facts demonstrating a sufficient relationship with the child and then must demonstrate that the parent has acted in a manner

inconsistent with his or her protected status as a parent." *Moriggia v. Castelo*, 256 N.C. App. 34, 47 (2017).

In the case *sub judice*, the trial court made the following pertinent findings of fact and conclusion of law in its order allowing intervention:

> 8. Intervenor has been a source of physical, financial, and emotional support for the minor child since birth. After the Intervenor and Plaintiff ended their relationship, the Intervenor has shared parenting time with the Plaintiff pursuant to an informal agreement between Plaintiff and Intervenor.

> 9. Intervenor has a parent-like relationship with the child [and] has standing to intervene in the present custody action pursuant to N.C. Gen Stat. § 50-13.5(j).

> 11. That the Plaintiff has brought the Intervenor, a non-parent, into the family unit and voluntarily ceded paramount decision-making authority over the minor child without creating an expectation that the relationship would be terminated.

Mother's challenge to intervenor's standing is limited solely to the trial court's invocation of N.C.G.S. § 50-13.5(j). This statute entitles grandparents to custody or visitation rights, and has no applicability to intervenor, who is not related by blood to K.B. Mother is correct that this cannot form the basis for intervenor's standing, and this portion of Finding of Fact 9 is erroneous. However, as § 50-13.1(a), *Krauss*, and *Moriggia* establish, a person unrelated to a child in a custody matter may still have standing under certain circumstances. Findings of Fact 8 and 11 satisfy the requirements that there be a sufficient relationship between the party seeking

intervention and the child, and that the parent has acted inconsistently with their status as parent. Mother has challenged neither finding, and unchallenged findings of fact are binding on appeal. *In re K.H.*, 281 N.C. App. 259, 270 (2022). The trial court concluded that "the Intervenor has standing to seek custody of the minor child," a conclusion supported by the binding findings of fact. Therefore, intervenor had standing to bring this current action.[2]

The dissent repeatedly suggests that intervenor is "interfering" with mother's right to the care and custody of her child, citing *Perdue v. Fuqua*, 195 N.C. App. 583 (2009) to assert that intervenor failed to "overcome the presumption that [mother] has the superior right to the care" and custody, and that the trial court did not find that mother "engaged in conduct inconsistent with her right to custody[.]" *Id.* at 584. However, as previously noted, the unchallenged Finding of Fact 11 reflects that mother "brought the Intervenor, a non-parent, into the family unit and voluntarily ceded paramount decision-making authority over the minor child . . . ." Similarly, the court later concluded plaintiff "intentionally took steps to identify Intervenor as a parent to the minor child[,]" and in the course of establishing a shared family unit, plaintiff "acted inconsistently with her paramount parental status." The motion to

---

[2] The dissent cites *McIntyre v. McIntyre*, 341 N.C. 629 (1995) to assert that a party acting under N.C.G.S. § 50-13.5(j) can only intervene "when the actual parents are in a custody dispute." *Id.* at 634–35. However, we note that *McIntyre* "was narrowly limited to suits initiated by grandparents for *visitation* and does not apply to suits for *custody*." *Sharp v. Sharp*, 124 N.C. App. 357, 360 (1996) (emphasis in original).

intervene and the evidence presented throughout the proceedings were sufficient for the trial court to find and conclude, as it did, that intervenor overcame the presumption that mother had the superior right to care and custody.

The dissent further characterizes our analysis as improperly creating an argument for intervenor. Although it is true that the trial court found standing under the incorrect statute, the issue of standing was clearly before the trial court. As previously stated, the record and findings of fact in this de novo review are sufficient to show that intervenor had standing under N.C.G.S. § 50-13.1(a).

### B. Modification Based on Change in Circumstances

> In a child custody case, the trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Unchallenged findings of fact are binding on appeal. The trial court's conclusions of law must be supported by adequate findings of fact.

*Thomas v. Thomas*, 233 N.C. App. 736, 738 (2014) (citation omitted). Whether or not there has been a change in circumstances is a conclusion of law. *Brooker v. Brooker*, 133 N.C. App. 285, 289 (1999).

"As in most child custody proceedings, a trial court's principal objective is to measure whether a change in custody will serve to promote the child's best interests." *Shipman v. Shipman*, 357 N.C. 471, 474 (2003) (citation omitted). A trial court accomplishes this objective by determining whether the child's circumstances have

changed, then determining whether this change has affected the welfare of the child. *Id.* If the court finds both to be the case, it must then determine whether modifying the custody order is in the best interest of the child. *Id.* Importantly, "before a child custody order may be modified, the evidence must demonstrate a connection between the substantial change in circumstances and the welfare of the child, and flowing from that prerequisite is the requirement that the trial court make findings of fact regarding that connection." *Id.* at 478 (citing *Carlton v. Carlton*, 145 N.C. App. 252, 262 (Tyson, J., dissenting), *rev'd per curiam per dissent*, 354 N.C. 561, 557 (2001) *cert. denied,* 122 S. Ct. 2630 (2002)).

We note at the outset that while both parties stipulated that there was a change of circumstances, this does not affect our inquiry. *See Thomas*, 233 N.C. App. 736 at 739–40. The existence of a change in circumstances is a conclusion of law, and stipulations to conclusions of law are generally invalid. *Id.*

Finding of Fact 25 provides a summary of the change in circumstances as determined by the trial court: "There has been a breakdown in communication between the parties regarding care, custody, and control of the child in both major decisions, such as medication and school enrollment, and minor issues such as haircuts." In Finding 26, the trial court determined that this breakdown in communication "has affected the minor child in that he has exhibited difficulty in transitioning between households, becoming emotional and clingy."

Even if we assume, without deciding, that the communication issues between

mother and intervenor constitute a change in circumstances, the trial court has not articulated a sufficient nexus between these issues and K.B.'s difficulties with transitions between the homes. While the Court in *Shipman* did not require robust specificity, instead noting that the "effects of the substantial changes in circumstances on the minor child in the present case are self-evident," *Shipman*, 357 N.C. at 479, we discern no such self-evident effects here. The parties' disagreements are not a "self-evident" cause of K.B.'s emotional dysregulation, since a child might become dysregulated for a variety of reasons. It was incumbent upon the trial court to make a finding explaining why this reason specifically had caused the dysregulation, which it failed to do.

The trial court found in Conclusion of Law 4, "There has been a significant change in circumstances affecting the minor child that render it appropriate to modify the July 27, 2023 custody order." Since we have determined that this conclusion is unsupported by the findings of fact, we vacate the modified custody order and direct the trial court to make additional findings of fact and conduct a new hearing if there is insufficient evidence in the record to allow the trial court to make the required additional findings of fact. Because we vacate the custody order, we need not address mother's third assignment of error concerning the elements of that order.

## C.    Contempt Order

A finding of contempt is a conclusion of law, and is evaluated like any other conclusion of law: whether the findings of fact support the conclusion, and in turn,

whether competent evidence supports the findings. *See Blanchard v. Blanchard*, 279 N.C. App. 280, 284 (2021). As noted *supra* II.A, conclusions of law are reviewed *de novo*.

The trial court sentenced mother to a 30-day suspended jail sentence, finding "beyond a reasonable doubt that Plaintiff willfully violated the July 26, 2022 custody order and Plaintiff is guilty of indirect criminal contempt," as was illustrated in Finding of Fact 8:

> [T]he Court finds beyond a reasonable doubt that Plaintiff enrolled the minor child in daycare at Christ Way Development Center in early September of 2022 without the knowledge or consent of the Intervenor. This was in contravention of the July 26, 2022 custody order granting primary legal custody of the child to Intervenor and paragraph (7) of the Parenting Guidelines incorporated therein.

Paragraph 7 of the Parenting Guidelines required that

> [e]ach party shall have direct access to the child's teachers, counselors, school, and religious advisors the same as if the parent were the sole custodian of the child. Neither party shall attempt to inhibit the free flow of information from any of the child's teachers or advisors to the other parent. Each party immediately shall notify the other party of any information obtained regarding the education and general welfare of the child. This includes advising each other of grades, progress in school, lessons or tutoring, and activities relating thereto.

Mother makes a series of arguments as to why the trial court erred in holding her in contempt: (1), paragraph 7 does not require knowledge or consent for one parent to enroll the child in an educational program; (2), daycare is not education; (3), what

occurred cannot be construed as daycare; and (4), intervenor's own actions indicate that the parties were not interpreting the guidelines to require prior notice. We disagree with each argument.

First, the trial court did not hold mother in contempt for merely violating Paragraph 7, but also for violating intervenor's legal custody rights, as she had been given primary legal custody under the 2022 custody provision. Legal custody is, generally, "the right and responsibility to make decisions with important and long-term implications for a child's best interest and welfare." *Diehl v. Diehl*, 177 N.C. App 642, 646 (2006). The enrollment of a child in daycare falls squarely within the ambit of decisions with important implications for the child's best interest.

This context, then, answers the second and third of Mother's arguments. The precise definition of "education" is not important; rather, what is important is mother's own admission that she enrolled K.B. in a daycare named "Christ Way Development Center" and that K.B. participated in everything at the daycare like the rest of the children. Furthermore, mother admitted that she only told intervenor where K.B. was attending daycare after intervenor had asked "the second or third time," a violation of Paragraph 7's requirement that each party immediately notify the other about information concerning education and general welfare. K.B. was participating in weekly, day-long programming at a religious daycare, the identity of which mother did not disclose initially, and to which intervenor had not consented, actions which a good-faith interpretation of the custody order prohibited.

Finally, mother attempts to argue that intervenor's interpretation of the parental guidelines was similar to mother's, which should prevent a finding of contempt. However, the example mother chooses is intervenor enrolling K.B. in kickball and only informing mother after the fact. Kickball does not implicate a child's long-term best interest and welfare like daycare does. Therefore, when read in its entirety, the custody order forbids the type of action mother undertook when she enrolled K.B. in daycare without the consent of intervenor. The trial court did not err in holding mother in criminal contempt on this issue.

Our trial courts are vested with broad discretion in child custody matters. *Shipman*, 357 N.C. at 474 (citing *Pulliam v. Smith*, 348 N.C. 616, 624 (1998)). "This discretion is based upon the trial courts' opportunity to see the parties; to hear the witnesses; and to detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges." *Id.* (cleaned up). Upon concluding "there is substantial evidence in the record to support the trial court's findings of fact, such findings are conclusive on appeal, even if record evidence might sustain findings to the contrary." *Id.* at 475 (cleaned up).

Despite this well-established precedent, the dissent appears to re-weigh the evidence to reach the conclusion that Finding of Fact 8 was unsupported. The dissent quotes from mother's testimony and appellate brief to determine conclusively that mother never enrolled K.B. in daycare, and that she was simply bringing her child to work. This conclusion, however, does not comport with mother's testimony. Mother

admitted that K.B. was "one of the children [she] was looking after" in the course of her employment at the daycare, and that K.B. "participate[d] in everything in school like the other kids[.]"  Mother also admitted that she filled out paperwork to enroll K.B. as a student at the daycare "[p]er state protocol."  Although she suggested that she only completed the paperwork to enroll him because of the state protocol, this testimony was substantial evidence for the trial court to *find beyond a reasonable doubt* that mother enrolled K.B. in daycare, in violation of the 26 July 2022 custody order.

It is possible that mother's statement that she would not have brought K.B. to that daycare if she hadn't been working indicated that she was just bringing K.B. to her place of work, and not for K.B. to have daycare.  It is similarly possible that mother brought him there because she didn't have to pay and would have otherwise enrolled K.B. in a different daycare.  Neither of these hypotheses are relevant or pertinent to our review in this case.  Mother's testimony established that she enrolled K.B. at the daycare, which is exactly what Finding of Fact 8 reflects.

Our Supreme Court has clearly recognized numerous times that trial courts have an "opportunity to see the parties; to hear the witnesses; and to detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges." *See e.g. Shipman*, 357 N.C. at 474.  It is not the role of this Court to reach into the bare record and attempt to re-weigh the credibility of the testimony and give greater weight to it than did the trial court.

III.     Conclusion

For the foregoing reasons, we affirm the order in part, vacate the order in part, and remand to the trial court to make additional findings of fact.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judge CARPENTER concurs.

Judge TYSON concurs in part and dissents in part by separate opinion.

TYSON, Judge, concurring in part, dissenting in part.

I fully concur the trial court erred in citing a wholly inapplicable statute for jurisdiction and standing for third-party intervention. I also concur with the majority's decision to vacate the custody order because the trial court's conclusion a substantial change in circumstances had occurred is unsupported by its findings of fact.

I disagree with the majority's conclusion the non-relative, third-party Intervenor had standing, as no other basis for standing or jurisdiction was asserted or found. Intervenor has asserted no arguments on appeal, and this Court cannot formulate and make new arguments for the parties on appeal. *In re R.A.F.*, 384 N.C. 505, 512, 886 S.E.2d 159, 164 (2023) ("Further, the Court of Appeals may not address an issue not raised or argued by respondent for '[i]t is not the role of the appellate courts . . . to create an appeal for an appellant.'" (quoting *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360 (2005)). The statute cited by the trial court as the basis for intervention does not provide Intervenor standing, and without such the trial court was, and this Court is, without jurisdiction.

I also disagree with the majority's decision to affirm the trial court's conclusion Mother committed criminal contempt. The totality and *quantum* of the evidence presented, taken as true, does not support criminal contempt. *See Blanchard v. Blanchard*, 279 N.C. App. 280, 284, 865 S.E.2d 693, 697 (2021).

## I. Standing

"Subject matter jurisdiction has been defined as a court's power to hear a specific type of action, and 'is conferred upon the courts by either the North Carolina Constitution or by statute.'" *Yurek v. Shaffer*, 198 N.C. App. 67, 75, 678 S.E.2d 738, 744 (2009) (quoting *In re McKinney*, 158 N.C. App. 441, 443, 581 S.E.2d 793, 795 (2003)). "'Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction.'" *Myers v. Baldwin*, 205 N.C. App. 696, 698, 698 S.E.2d 108, 109 (2010) (quoting *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878 (2002)). "[P]laintiffs [and Intervenors carry and] have the burden of proving that standing exists." *Am. Woodland Indus., Inc. v. Tolson*, 155 N.C. App. 624, 627, 574 S.E.2d 55, 57 (2002) (citation omitted). Questions of standing are reviewed *de novo* by this Court. *Fort v. Cnty. of Cumberland*, 218 N.C. App. 401, 404, 721 S.E.2d 350, 353 (2012).

## A. N.C. Gen Stat. § 50-13.5(j)

The trial court, in Finding of Fact 9 of the 11 September 2020 Order Allowing Intervention, found, "Intervenor has a parent-like relationship with the child [and] has standing to intervene in the present custody action pursuant to N.C. Gen. Stat. § 50-13.5(j)."

N.C. Gen. Stat. § 50-13.5(j) (2023) provides:

> (j) **Custody and Visitation Rights *of Grandparents.*** –
> In any action in which the custody of a minor child has been determined, upon a motion in the cause and a showing of changed circumstances pursuant to G.S. 50-13.7, the *grandparents of the child* are entitled to such custody or

> visitation rights as the court, in its discretion, deems appropriate. As used in this subsection, *"grandparent" includes a biological grandparent of a child adopted by a stepparent or a relative of the child where a substantial relationship exists between the grandparent and the child.* Under no circumstances shall a biological grandparent of a child adopted by adoptive parents, neither of whom is related to the child and where parental rights of both biological parents have been terminated, be entitled to visitation rights.

N.C. Gen. Stat. § 50-13.5(j) (2023) (emphasis supplied).

The majority's opinion correctly acknowledges N.C. Gen. Stat. § 50-13.5(j) (2023) "entitles grandparents to custody or visitation rights, and has no applicability to [I]ntervenor, who is not related by blood to K.B." Their opinion also correctly concludes "Mother is correct [ ] this [statute] cannot form the basis for [I]ntervenor's standing, and th[at] portion of Finding of Fact 9 is erroneous." Section 50-13.5(j) (2023) was and is the sole basis asserted in the "Order Allowing Intervention" filed 11 September 2020 to permit Intervenor to interfere with the biological parents' agreed-upon and entered final custody order. N.C. Gen. Stat. § 50-13.5(j) (2023).

The case of *McIntyre v. McIntyre* holds a party acting under N.C. Gen. Stat. § 50-13.5(j) cannot initiate a custody action, and a party acting under that statute can only intervene to seek visitation when the actual parents are in a custody dispute. *McIntyre v. McIntyre*, 341 N.C. 629, 634-35, 461 S.E.2d 745, 749-50 (1995) (explaining N.C. Gen. Stat. §§ 50-13.1(a), 50-13.2(b1), 50-13.5(j), and 50-13.2A "provide *grandparents* with the right to seek *'visitation' only* in certain clearly specified

3

situations" and "[t]hose situations do not include that of initiating suit against parents whose family is intact and where no custody proceeding is ongoing").

It is undisputed Mother had left Intervenor's home around 1 July 2020 and their relationship had ended, a month prior to Intervenor's purported motion to intervene and over six months after the final custody order as between the parents had been entered on 9 December 2019.

### B. N.C. Gen. Stat. § 50-13.1(a)

The majority's conclusion errs by constructing an argument for Intervenor and asserting N.C. Gen. Stat. § 50-13.1(a), *Krauss v. Wayne County Dept. of Social Services*, 347 N.C. 371, 379, 493 S.E.2d 428, 433 (1997), and *Moriggia v. Castelo*, 256 N.C. App. 34, 47, 805 S.E.2d 378, 385 (2017), establish jurisdiction and standing for Intervenor to interfere with Mother's custody. Neither the motion to intervene nor the trial court's order assert or mention N.C. Gen. Stat. § 50-13.1(a), yet the majority's opinion relies upon an unasserted and unnamed statute to purportedly excuse the trial court's error and its lack of jurisdiction.

Our Supreme Court recently explained the reasons appellate courts cannot advance arguments the parties have not made for themselves:

> First, it departs from the well-settled rule in juvenile cases that appellate courts "may not address an issue not raised or argued by respondent for it is not the role of the appellate courts to create an appeal for an appellant." *In re R.A.F.*, 384 N.C. at 512, 886 S.E.2d 159 (cleaned up); N.C. R. App. P. 28(b)(6).
> Second, it conflicts with our preservation rules in

juvenile cases, which require litigants to timely raise arguments concerning evidentiary privileges or constitutional claims in order to preserve them for appellate review. *See In re J.N.*, 381 N.C. 131, 133, 871 S.E.2d 495 (2022); N.C. R. App. P. 10.

Finally, and most notably here, when an appellate court addresses a legal theory on appeal that has not been tested in the crucible of adversarial briefing, there is much greater risk that the court is missing something and, as a result, is about to mess up the law.

*In re E.H.*, __ N.C. __, __, 919 S.E.2d 233, 239 (2025).

The majority's opinion also wholly fails to address the mandatory findings that are required *before* an intervenor may invoke statutory standing under N.C. Gen. Stat. § 50-13.1(a) (2023). This Court has previously held: "Despite the broad language of N.C. Gen. Stat. § 50-13.1, *non-parents do not have standing to seek custody against a parent unless they overcome the presumption that the parent has the superior right to the care, custody, and control of the minor child.*" *Perdue v. Fuqua*, 195 N.C. App. 583, 586, 673 S.E.2d 145, 148 (2009) (emphasis supplied) (citing *Petersen v. Rogers*, 337 N.C. 397, 403-04, 445 S.E.2d 901, 905 (1994)).

This holding in *Perdue* and its progeny merely restates and applies the universal and fundamental law prohibiting unrelated third parties from interfering with a fit parent's right to the exclusive care, custody, and control of their minor child. "This Court has recognized that the protection of the family unit is guaranteed by the Ninth and Fourteenth Amendments to the United States Constitution." *Adams v.*

*Tessener*, 354 N.C. 57, 60, 550 S.E.2d 499, 501 (2001) (citing *Petersen*, 337 N.C. at 401, 445 S.E.2d at 903).

Applying any "best interest of the child analysis" or other purported or invented basis, as between non-parents and parents, offends the Due Process Clause if no supported findings and conclusions prove the parent is unfit or has acted inconsistent with their constitutional right to parent their child. *Perdue*, 195 N.C. App. at 586, 673 S.E.2d at 148.

Here, N.C. Gen. Stat. § 50-13.1(a) was never cited by Intervenor or the trial court or before this Court. The majority's conclusion improperly creates an argument for Intervenor because this argument was not raised by Intervenor at trial or on appeal. *See In re E.H.*, __ N.C. at __, 919 S.E.2d at 239. The majority's holding also incorrectly affirms the trial court's basis for finding Intervenor, a third party who is admittedly unrelated to the child, to have had standing under N.C. Gen. Stat. § 50-13.5(j). N.C. Gen. Stat. § 50-13.5(j) cannot provide standing to Intervenor for even visitation, much less custody, or to provide superior rights over Mother because Intervenor is not the minor child's grandparent and is not related to the child in any familial relationship or legal manner. N.C. Gen. Stat. § 50-13.5(j) (2023); *Adams v. Dillon*, __ N.C. App. __, __ S.E.2d __, 2025 WL 2524178 (Sept. 3, 2025) (denying all visitation rights to a long-term, unrelated caregiver of an infant child, even as against a grandparent).

Intervenor was allowed as a purported Intervenor nearly *a year after* the child's biological parents had settled custody through an entered order on 9 December 2019. No custody action was pending. *See McIntyre*, 341 N.C. at 634-35, 461 S.E.2d at 749-50. Lastly, without a finding Mother is unfit or has acted inconsistent with her constitutional right to parent her child, Intervenor, a non-parent and non-relative, wholly lacks standing to interfere under N.C. Gen. Stat. § 50-13.1(a). *Perdue*, 195 N.C. App. at 586, 673 S.E.2d at 148.

Intervenor herself testified Plaintiff is a fit parent, who loves and cares for her child, yet she purports to decide the child's grooming, appearance, training, schools, medical care, and other matters, contrary to and which lie exclusively within the care, custody, and control of a fit, biological parent. *Happel v. Guilford Cnty. Bd. of Educ.*, 387 N.C. 186, 194, 913 S.E.2d 174, 184 (2025) (providing "the state constitution protects a parent's right to control her child's upbringing, including her right to make medical decisions on her child's behalf" and explaining the "right to control the upbringing of one's own child is deeply rooted in '[t]he history and culture of Western civilization' and is 'now established beyond debate as an enduring American tradition'" (quoting *Troxel v. Granville*, 530 U.S. 57, 66, 147 L.Ed.2d 49, 57 (2000))). The trial court's intervention order and the majority's opinion are affected with prejudicial and reversible errors. *Id.*

## II. Contempt

The majority's opinion also erroneously dismisses Mother's third argument

7

regarding the trial court's conclusion to find and hold Mother in criminal contempt. Mother specifically argues Finding of Fact 8 is unsupported by the evidence or legal basis.

Finding of Fact 8 provides:

> 8. Based on the evidence and testimony presented, the Court *finds beyond a reasonable doubt* that Plaintiff enrolled the minor child in daycare at Christ Way Child Development Center in early September of 2022 without the knowledge or consent of the Intervenor. This was in contravention of the July 26, 2022 custody order granting primary legal custody of the child to Intervenor and paragraph (7) of the Parenting Guidelines incorporated therein.

(emphasis supplied).

The 26 July 2022 purported custody order granting primary legal custody of the child to Intervenor is wholly unlawful and is in gross derogation of Mother's Constitutional right to the exclusive care, custody, and control of her son. *Id.* Mother asserts the trial court also erred because she did not enroll the child in daycare, and she "was only taking the child with her while she herself worked at the daycare center" for eight times while physically present with her child.

Mother testified to the following regarding the daycare:

> Q. Okay. But it didn't start until what time in September that you started working at the daycare?
>
> A. It was the beginning of September.
>
> Q. Okay.

8

A. I believe September 8th.

Q. Okay. So it would have been less than – no more than eight, ten times?

A. Correct.

Q. Okay. And if you hadn't been working there, would [K.B.] have gone to that daycare?

A. No.

Q. You pay for him to go there?

A. No.

Q. So you didn't – why didn't you have to pay?

A. Because I worked there.

Q. Did you stay in contact with [K.B.] during the day?

A. Yes.

. . . .

Q. So was [K.B.] one of the children you were looking after?

A. Yes.

Q. So were you with him all day?

A. Yes.

Q. Did you consider under the order that you were required to notify [Intervenor] of the situation?

A. No, I did not know I needed to tell her that, where I worked.

The majority's decision affirms the trial court's conclusion such evidence

9

supports a finding of criminal contempt "beyond a reasonable doubt." "'[W]hen the court fails to find facts so that this Court can determine that the order is adequately supported by competent evidence . . . then the order entered thereon must be vacated and the case remanded for detailed findings of fact.'" *Hampton v. Hampton*, 29 N.C. App. 342, 344, 224 S.E.2d 197, 199 (1976) (quoting *Crosby v. Crosby*, 272 N.C. 235, 238-39, 158 S.E.2d 77, 80 (1967)).

Presuming jurisdiction and any lawful basis to enter such an order as against a fit Mother, the totality and *quantum* of the evidence presented, taken as true, does not support a conclusion of criminal contempt to survive a motion to dismiss. *See Blanchard v. Blanchard*, 279 N.C. App. 280, 284, 865 S.E.2d 693, 697 (2021). Based upon Mother's unchallenged testimony, Finding of Fact 8 is not based on substantial evidence to support criminal contempt "beyond a reasonable doubt." This is not a re-weighing of evidence, and it is uncontested Mother lawfully took her child to her place of employment eight times, did not pay for the care, and was physically present with her child, while at her place of employment. *Id.* Mother was required to put the school on written notice of his physical presence with Mother at the school where she was employed.

### III. Conclusion

I fully concur in holding the trial court erred in citing a wholly inapplicable statute for jurisdiction and standing to allow an unrelated third party to intervene nearly a year after a final custody order had been entered between the biological

parents. I also concur with the majority's decision to vacate the purported custody order because the trial court's conclusion a substantial change in circumstances had occurred is wholly unsupported by its findings of fact.

N.C. Gen. Stat. § 50-13.1(a) was never cited by Intervenor at trial, or by the trial court, or by Intervenor on appeal. The majority's conclusion improperly creates an argument for Intervenor because this argument was not raised by Intervenor at trial or even before this Court. *See In re E.H.*, __ N.C. at __, 919 S.E.2d at 239. Intervenor failed to file any brief or to raise any arguments before this Court.

"This Court has recognized that the protection of the family unit is guaranteed by the Ninth and Fourteenth Amendments to the United States Constitution." *Adams v. Tessener*, 354 N.C. 57, 60, 550 S.E.2d 499, 501 (2001) (citing *Petersen v. Rogers*, 337 N.C. 397, 401, 445 S.E.2d 901, 903 (1994)).

Applying any "best interest of the child analysis" or other purported basis to intervene and award primary custody, as between non-parents and parents, offends the Due Process Clause, where no supported finding and conclusion declares the parent is unfit or has acted inconsistent with their constitutional right to the care, custody, and control of their child. *Troxel*, 530 U.S. at 66, 147 L.Ed.2d at 57; *Happel,* 387 N.C. at 194, 913 S.E.2d at 184; *Petersen,* 337 N.C. at 403-04, 445 S.E.2d at 905; *Perdue*, 195 N.C. App. at 586, 673 S.E.2d at 148.

Without any Constitutional or jurisdictional basis, the trial court's order is properly vacated, and the entire illegal intervention and custody orders are properly

vacated and remanded for dismissal with prejudice.  I respectfully dissent.