IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-55

Filed 19 November 2025

Randolph County, No. 19CVD002693-750

JENNIFER BULLINS, Plaintiff,

v.

HAYLEY NICOLE RIDDLE, Intervenor,

v.

JUSTIN A. TURNER, Defendant.

Appeal by plaintiff mother from orders entered 11 September 2020, 27 June 2022, 28 March 2024, and 17 April 2024 by Judge Sarah N. Lanier in District Court, Randolph County. Heard in the Court of Appeals 14 August 2025.

*Hayes Law Offices, PLLC, by Mark L. Hayes, for plaintiff-appellant.*

*Megerian & Wells, by Margaret Jeanne Megerian, for intervenor-appellee.*

*No brief filed for Justin A. Turner, pro se defendant-appellee.*

ARROWOOD, Judge.

Jennifer Bullins ("mother") appeals from multiple orders, the final order dated 17 April 2024, permitting intervention by Haley Nicole Riddle ("intervenor") in mother's complaint for custody of juvenile K.B.[1] against Justin A. Turner ("father"), awarding joint legal and physical custody to mother and intervenor, awarding

---

[1] Initials are used to protect the identity of the juvenile.

primary legal and physical custody to intervenor, further modifying custody, and holding mother in criminal contempt for violating the custody order. For the following reasons, we affirm the final order in part, vacate it in part, dismiss the appeal in part, and remand this matter to the trial court for additional findings of fact.

## I.     Factual Background

Mother initiated this case with a complaint for child custody on 26 November 2019. In this complaint, she alleged that father had no interest in visitation with K.B., demonstrated a blatant disregard for K.B.'s best interests, and had requested that his rights be relinquished. On 9 December 2019, the trial court ordered mother have full legal and physical custody of K.B. and father's rights were extinguished.

On 31 July 2020, intervenor filed a motion seeking permission to intervene in the custody action and be given joint custody of K.B. She alleged that she was the former partner of mother and had been "a primary source of physical, financial, and emotional support for the minor child since birth." Intervenor stated that mother resided with her at the time K.B. was born and intervenor, with the agreement of mother, took on many of the parenting duties, such that mother "voluntarily ceded paramount decision-making authority over the minor child without creating an expectation that the relationship would be terminated." Mother left intervenor's home around 1 July 2020 and their relationship ended. Following a hearing on the

motion, the trial court concluded intervenor had standing to intervene, and on 11 September 2020 awarded joint legal and physical custody to intervenor and mother, with intervenor given the majority of visitation days.

Three days later, intervenor filed a motion to modify custody and a motion for an ex parte custody order, alleging substantial changes to circumstances affecting K.B.'s welfare, based on the violent actions of mother and mother's romantic partner. On 20 October 2020, mother filed a motion requesting the court set aside the custody order on grounds of intervenor's misrepresentation and misconduct; she also filed a motion in the alternative to modify custody.

Following an order for temporary child custody and two amendments, the trial court addressed the merits of mother's motions on 15 June 2022. The trial court made 213 findings of fact, including that mother hit intervenor during and following their relationship, but that K.B. was never abused by either party, nor witnessed any domestic violence. The trial court gave full legal and physical custody to intervenor, and allowed mother to have visitation every other weekend, and every other Wednesday and Thursday. The court also incorporated a list of 13 Parenting Guidelines which it required the parties to follow. These guidelines permitted the parent who had K.B. to make minor routine decisions, required a free flow of information concerning health care providers and teachers, and set "ground rules" concerning the way the parties would interact with K.B. as to each other's parenting.

On 8 November 2023, intervenor filed a motion to modify custody and for an ex parte custody order. She alleged that "substantial and material changes in circumstances" had occurred: (1) K.B. had been refusing to leave intervenor's car during visitation exchanges; (2) intervenor saw a man who had been arrested for felony controlled substance possession in mother's car; (3) K.B. told intervenor that this man had been staying with mother; (4) mother was harassing intervenor; (5) mother interfered with K.B.'s therapy; and (6) mother was expecting K.B. to hold Facetime conversations longer than were developmentally appropriate. Intervenor also alleged that mother had violated the custody order by: (1) enrolling K.B. in daycare without intervenor's knowledge or consent; (2) giving K.B. haircuts to which intervenor had not consented; and (3) keeping K.B. in an environment injurious to his welfare. Intervenor also alleged that K.B. had called her a "fake mamma" and made other statements that indicated he was hearing disparaging comments about intervenor while staying with mother. Intervenor requested the court grant her sole custody and hold mother in contempt.

The trial court conducted hearings on intervenor's motions on 31 January 2024 and 22 February 2024. On the issue of contempt, the trial court found that mother's enrollment of K.B. in daycare was a willful violation of the custody order, which had granted intervenor primary custody and required prompt communication concerning matters of education. Mother testified at the hearing that she had brought K.B. to

the daycare where she worked eight to ten times, and that she was with him all day as he was one of the children she looked after at the daycare.

Regarding custody, the trial court found that both mother and intervenor stipulated to a change in circumstances affecting K.B., that there had been "a breakdown in communication between the parties" over major and minor decisions, and that these communications issues had affected K.B. such that he had difficulty transitioning between the parties' households. The trial court awarded intervenor tie-breaking authority in decision-making, and granted mother visitation every other weekend and every other Wednesday evening for an hour and a half, removing Thursday visitation. The trial court also sentenced mother to 30 days in jail, suspended the sentence, and placed her on 12 months of unsupervised probation. An amended order was filed 17 April 2024. Mother gave notice of appeal 8 May 2024.

## II.     Discussion

Mother raises four issues on appeal: (1) whether intervenor has standing to seek custody of K.B. under N.C.G.S. § 50-13.5(j); (2) whether the trial court erred in concluding that a substantial change in circumstances justified a modification of the custody order; (3) whether the trial court abused its discretion in creating the new visitation schedule; and (4) whether the trial court erred in holding mother in criminal contempt for violation of the custody order. We address each argument in turn.

### A.     Intervenor's Standing

"Standing implicates a court's subject matter jurisdiction and may be raised at any time, even on appeal." *Fish House, Inc. v. Clarke*, 204 N.C. App. 130, 136 (2010) (citation omitted). Standing is a question of law, which we consider *de novo*. *Violette v. Town of Cornelius*, 283 N.C. App. 565, 569 (2022). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *In re G.C.*, 230 N.C. App. 511, 516 (2013) (citation omitted).

"Subject matter jurisdiction is a court's power to hear a specific type of action, and is conferred upon the courts by either the North Carolina Constitution or by statute." *Chavez v. Wadlington*, 261 N.C. App. 541, 544 (2018) (quotations and citation omitted). Standing permits a court to exercise subject matter jurisdiction. *Id*. The circumstances under which a person has standing to seek the custody of a child are contained in N.C.G.S. § 50-13 (2025). Most broadly, "[a]ny parent, relative, or other person, agency, organization or institution claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child . . . ." N.C.G.S. § 50-13.1(a).

However, this statute "does not convey an absolute right upon every person who allegedly has an interest in the child to assert custody." *Krauss v. Wayne County Dept. of Social Services*, 347 N.C. 371, 379 (1997). Rather, it must respect the constitutional rights of parents to raise their children. *Id.* In light of these limitations, to make "a claim for custody on [the basis of the child's best interest], the party seeking custody must allege facts demonstrating a sufficient relationship with

the child and then must demonstrate that the parent has acted in a manner inconsistent with his or her protected status as a parent." *Moriggia v. Castelo*, 256 N.C. App. 34, 47 (2017).

In the case *sub judice*, the trial court made the following pertinent findings of fact and conclusion of law in its order allowing intervention:

> 8. Intervenor has been a source of physical, financial, and emotional support for the minor child since birth. After the Intervenor and Plaintiff ended their relationship, the Intervenor has shared parenting time with the Plaintiff pursuant to an informal agreement between Plaintiff and Intervenor.
>
> 9. Intervenor has a parent-like relationship with the child [and] has standing to intervene in the present custody action pursuant to N.C. Gen Stat. § 50-13.5(j).
>
> 11. That the Plaintiff has brought the Intervenor, a non-parent, into the family unit and voluntarily ceded paramount decision-making authority over the minor child without creating an expectation that the relationship would be terminated.

Mother's challenge to intervenor's standing is limited solely to the trial court's invocation of N.C.G.S. § 50-13.5(j). This statute entitles grandparents to custody or visitation rights, and has no applicability to intervenor, who is not related by blood to K.B. Mother is correct that this cannot form the basis for intervenor's standing, and this portion of Finding of Fact 9 is erroneous. However, as § 50-13.1(a), *Krauss*, and *Moriggia* establish, a person unrelated to a child in a custody matter may still have standing under certain circumstances. Findings of Fact 8 and 11 satisfy the

requirements that there be a sufficient relationship between the party seeking intervention and the child, and that the parent has acted inconsistently with their status as parent. Mother has challenged neither finding, and unchallenged findings of fact are binding on appeal. *In re K.H.*, 281 N.C. App. 259, 270 (2022). The trial court concluded that "the Intervenor has standing to seek custody of the minor child," a conclusion supported by the binding findings of fact. Therefore, intervenor had standing to bring this current action.[2]

The dissent repeatedly suggests that intervenor is "interfering" with mother's right to the care and custody of her child, citing *Perdue v. Fuqua*, 195 N.C. App. 583 (2009) to assert that intervenor failed to "overcome the presumption that [mother] has the superior right to the care" and custody, and that the trial court did not find that mother "engaged in conduct inconsistent with her right to custody[.]" *Id.* at 584. However, as previously noted, the unchallenged Finding of Fact 11 reflects that mother "brought the Intervenor, a non-parent, into the family unit and voluntarily ceded paramount decision-making authority over the minor child . . . ." Similarly, the court later concluded plaintiff "intentionally took steps to identify Intervenor as a parent to the minor child[,]" and in the course of establishing a shared family unit,

---

[2] The dissent cites *McIntyre v. McIntyre*, 341 N.C. 629 (1995) to assert that a party acting under N.C.G.S. § 50-13.5(j) can only intervene "when the actual parents are in a custody dispute." *Id.* at 634–35. However, we note that *McIntyre* "was narrowly limited to suits initiated by grandparents for *visitation* and does not apply to suits for *custody*." *Sharp v. Sharp*, 124 N.C. App. 357, 360 (1996) (emphasis in original).

plaintiff "acted inconsistently with her paramount parental status." The motion to intervene and the evidence presented throughout the proceedings were sufficient for the trial court to find and conclude, as it did, that intervenor overcame the presumption that mother had the superior right to care and custody.

The dissent further characterizes our analysis as improperly creating an argument for intervenor. Although it is true that the trial court found standing under the incorrect statute, the issue of standing was clearly before the trial court. As previously stated, the record and findings of fact in this de novo review are sufficient to show that intervenor had standing under N.C.G.S. § 50-13.1(a).

### B. Modification Based on Change in Circumstances

> In a child custody case, the trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Unchallenged findings of fact are binding on appeal. The trial court's conclusions of law must be supported by adequate findings of fact.

*Thomas v. Thomas*, 233 N.C. App. 736, 738 (2014) (citation omitted). Whether or not there has been a change in circumstances is a conclusion of law. *Brooker v. Brooker*, 133 N.C. App. 285, 289 (1999).

"As in most child custody proceedings, a trial court's principal objective is to measure whether a change in custody will serve to promote the child's best interests." *Shipman v. Shipman*, 357 N.C. 471, 474 (2003) (citation omitted). A trial court

accomplishes this objective by determining whether the child's circumstances have changed, then determining whether this change has affected the welfare of the child. *Id.* If the court finds both to be the case, it must then determine whether modifying the custody order is in the best interest of the child. *Id.* Importantly, "before a child custody order may be modified, the evidence must demonstrate a connection between the substantial change in circumstances and the welfare of the child, and flowing from that prerequisite is the requirement that the trial court make findings of fact regarding that connection." *Id.* at 478 (citing *Carlton v. Carlton*, 145 N.C. App. 252, 262 (Tyson, J., dissenting), *rev'd per curiam per dissent*, 354 N.C. 561, 557 (2001) *cert. denied,* 122 S. Ct. 2630 (2002)).

We note at the outset that while both parties stipulated that there was a change of circumstances, this does not affect our inquiry. *See Thomas*, 233 N.C. App. 736 at 739–40. The existence of a change in circumstances is a conclusion of law, and stipulations to conclusions of law are generally invalid. *Id.*

Finding of Fact 25 provides a summary of the change in circumstances as determined by the trial court: "There has been a breakdown in communication between the parties regarding care, custody, and control of the child in both major decisions, such as medication and school enrollment, and minor issues such as haircuts." In Finding 26, the trial court determined that this breakdown in communication "has affected the minor child in that he has exhibited difficulty in transitioning between households, becoming emotional and clingy."

Even if we assume, without deciding, that the communication issues between mother and intervenor constitute a change in circumstances, the trial court has not articulated a sufficient nexus between these issues and K.B.'s difficulties with transitions between the homes. While the Court in *Shipman* did not require robust specificity, instead noting that the "effects of the substantial changes in circumstances on the minor child in the present case are self-evident," *Shipman*, 357 N.C. at 479, we discern no such self-evident effects here. The parties' disagreements are not a "self-evident" cause of K.B.'s emotional dysregulation, since a child might become dysregulated for a variety of reasons. It was incumbent upon the trial court to make a finding explaining why this reason specifically had caused the dysregulation, which it failed to do.

The trial court found in Conclusion of Law 4, "There has been a significant change in circumstances affecting the minor child that render it appropriate to modify the July 27, 2023 custody order." Since we have determined that this conclusion is unsupported by the findings of fact, we vacate the modified custody order and direct the trial court to make additional findings of fact and conduct a new hearing if there is insufficient evidence in the record to allow the trial court to make the required additional findings of fact. Because we vacate the custody order, we need not address mother's third assignment of error concerning the elements of that order.

### C.    Contempt Order

Lastly, mother contends remand is necessary to correct the trial court's

- 11 -

erroneous finding that held mother in criminal contempt. However, "appeal from a finding of contempt by a judicial official inferior to a superior court judge is by hearing de novo before a superior court judge." N.C.G.S. § 5A-17 (2025). "This statute vests exclusive jurisdiction in the superior court to hear appeals from orders in the district court holding a person in criminal contempt." *Summerville v. Summerville*, 259 N.C. App. 228, 242 (2018) (citation omitted). Accordingly, the Randolph County Superior Court has exclusive jurisdiction to hear an appeal on the trial court's finding of criminal contempt. As we lack jurisdiction to address the issue, mother's appeal as to criminal contempt is dismissed.

## III.    Conclusion

For the foregoing reasons, we affirm the order in part, vacate the order in part, dismiss the appeal in part, and remand to the trial court to make additional findings of fact.

AFFIRMED IN PART, VACATED IN PART, DISMISSED IN PART, AND REMANDED.

Judge CARPENTER concurs.

Judge TYSON concurs in part and dissents in part by separate opinion.

TYSON, Judge, concurring in part, dissenting in part.

I fully concur the trial court erred in citing a wholly inapplicable statute for jurisdiction and standing to allow third-party intervention. I also concur with the majority's decision and holding to vacate the custody order because the trial court's conclusion a substantial change in circumstances had occurred is unsupported by its findings of fact.

I disagree with the majority's conclusion and holding the non-relative, third-party Intervenor had standing, as no other basis for standing or jurisdiction was asserted or found. Intervenor has asserted no arguments on appeal, and this Court cannot formulate and make new arguments for the parties on appeal. *In re R.A.F.*, 384 N.C. 505, 512, 886 S.E.2d 159, 164 (2023) ("Further, the Court of Appeals may not address an issue not raised or argued by respondent for '[i]t is not the role of the appellate courts . . . to create an appeal for an appellant.'" (quoting *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360 (2005)). The statute cited by the trial court as the basis for intervention does not provide Intervenor with standing, and the trial court was, and this Court is, without jurisdiction to allow it.

I also disagree with the majority's decision to uphold the conclusion Mother committed criminal contempt. Any orders entered on, or proceedings held after, the unlawful initial intervention are without jurisdiction, are invalid and void. *Eudy v. Eudy*, 288 N.C. 71, 75, 215 S.E.2d 782, 785 (1975), *overruled on other grounds by Quick v. Quick*, 305 N.C. 446, 290 S.E.2d 653 (1982) ("Where jurisdiction is statutory

and the Legislature requires the Court to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the Court to certain limitations, an act of the Court beyond these limits is in excess of its jurisdiction."); *State ex rel. Hanson v. Yandle*, 235 N.C. 532, 535, 70 S.E.2d 565, 568 (1952) ("A lack of jurisdiction or power in the court entering a judgment always avoids the judgment, and a void judgment may be attacked whenever and wherever it is asserted . . . ." (citations omitted)); *Hart v. Thomasville Motors, Inc.*, 244 N.C. 84, 90, 92 S.E.2d 673, 678 (1956) ("A void judgment is, in legal effect, no judgment. No rights are acquired or divested by it. It neither binds nor bars any one, and all proceedings founded upon it are worthless." (citation and quotation marks omitted)). I respectfully dissent.

## I.   Standing

"Subject matter jurisdiction has been defined as a court's power to hear a specific type of action, and 'is conferred upon the courts by either the North Carolina Constitution or by statute.'" *Yurek v. Shaffer*, 198 N.C. App. 67, 75, 678 S.E.2d 738, 744 (2009) (quoting *In re McKinney*, 158 N.C. App. 441, 443, 581 S.E.2d 793, 795 (2003)). "'Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction.'" *Myers v. Baldwin*, 205 N.C. App. 696, 698, 698 S.E.2d 108, 109 (2010) (quoting *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878 (2002)). "[P]laintiffs [and Intervenors carry and] have the burden of proving [ ] standing exists." *Am. Woodland Indus., Inc. v. Tolson*, 155 N.C. App. 624, 627, 574 S.E.2d 55, 57 (2002) (citation omitted). Questions of standing are reviewed *de novo* by this

2

Court. *Fort v. Cnty. of Cumberland*, 218 N.C. App. 401, 404, 721 S.E.2d 350, 353 (2012).

## A. N.C. Gen Stat. § 50-13.5(j)

The trial court, in Finding of Fact 9 of the 11 September 2020 Order Allowing Intervention, found, "Intervenor has a parent-like relationship with the child [and] has standing to intervene in the present custody action pursuant to N.C. Gen. Stat. § 50-13.5(j)."

N.C. Gen. Stat. § 50-13.5(j) (2023) provides:

> (j) **Custody and Visitation Rights *of Grandparents.*** –
> In any action in which the custody of a minor child has been determined, upon a motion in the cause and a showing of changed circumstances pursuant to G.S. 50-13.7, the *grandparents of the child* are entitled to such custody or visitation rights as the court, in its discretion, deems appropriate. As used in this subsection, *"grandparent" includes a biological grandparent of a child adopted by a stepparent or a relative of the child where a substantial relationship exists between the grandparent and the child.* Under no circumstances shall a biological grandparent of a child adopted by adoptive parents, neither of whom is related to the child and where parental rights of both biological parents have been terminated, be entitled to visitation rights.

N.C. Gen. Stat. § 50-13.5(j) (2023) (emphasis supplied).

The majority's opinion correctly acknowledges N.C. Gen. Stat. § 50-13.5(j) (2023) only "entitles grandparents to custody or visitation rights, and has no applicability to [I]ntervenor, who is not related by blood to K.B." Their opinion also correctly concludes "Mother is correct [ ] this [statute] cannot form the basis for

3

[I]ntervenor's standing, and th[at] portion of Finding of Fact 9 is erroneous."

N.C. Gen. Stat. § 50-13.5(j) (2023) was and is the *sole* basis asserted and stated in the "Order Allowing Intervention" filed 11 September 2020 to permit Intervenor to interfere with the biological parents' agreed-upon and entered final custody order entered months earlier. N.C. Gen. Stat. § 50-13.5(j) (2023).

The case of *McIntyre v. McIntyre* holds a party acting under N.C. Gen. Stat. § 50-13.5(j) cannot initiate a custody action, and a party acting under that statute can only intervene to seek *visitation* when the actual parents are in a *current custody* dispute. *McIntyre v. McIntyre*, 341 N.C. 629, 634-35, 461 S.E.2d 745, 749-50 (1995) (explaining N.C. Gen. Stat. §§ 50-13.1(a), 50-13.2(b1), 50-13.5(j), and 50-13.2A "provide *grandparents* with the right to seek *'visitation' only* in certain clearly specified situations" and "[t]hose situations do not include that of initiating suit against parents whose family is intact and where no custody proceeding is ongoing").

Over six months had elapsed since the final joint custody order between the parents of the child had been entered on 9 December 2019. No custody action was pending. Even if relevant, it is undisputed Mother had left Intervenor's home around 1 July 2020 and their relationship had ended a month prior to Intervenor's purported motion to intervene.

## B. N.C. Gen. Stat. § 50-13.1(a)

The majority's conclusion errs by constructing an argument out of whole cloth for Intervenor, who made no appearance or argument on appeal, and asserting N.C.

4

Gen. Stat. § 50-13.1(a), *Krauss v. Wayne County Dept. of Social Services*, 347 N.C. 371, 379, 493 S.E.2d 428, 433 (1997), and *Moriggia v. Castelo*, 256 N.C. App. 34, 47, 805 S.E.2d 378, 385 (2017), purportedly establish jurisdiction and standing for Intervenor to interfere with Mother's agreed-upon custody judgment.

Neither the motion to intervene nor the trial court's order assert or mention N.C. Gen. Stat. § 50-13.1(a), *Krauss*, or *Moriggia*. Yet the majority's opinion relies upon an unasserted and unnamed statute to purportedly excuse what we all agree is the trial court's lack of jurisdiction and prejudicial error.

Our Supreme Court recently explained the reasons why appellate courts cannot advance arguments a party has not preserved or asserted for themselves:

> First, it departs from the well-settled rule in juvenile cases that appellate courts "may not address an issue not raised or argued by respondent for it is not the role of the appellate courts to create an appeal for an appellant." *In re R.A.F.*, 384 N.C. at 512, 886 S.E.2d 159 (cleaned up); N.C. R. App. P. 28(b)(6).
> Second, it conflicts with our preservation rules . . . , which require litigants to timely raise arguments concerning evidentiary privileges or constitutional claims in order to preserve them for appellate review. *See In re J.N.*, 381 N.C. 131, 133, 871 S.E.2d 495 (2022); N.C. R. App. P. 10.
> Finally, and most notably here, when an appellate court addresses a legal theory on appeal that has not been tested in the crucible of adversarial briefing, there is much greater risk that the court is missing something and, as a result, is about to mess up the law.

*In re E.H.*, 388 N.C. 100, 108, 919 S.E.2d 233, 239 (2025). Worse here, Intervenor has made no appearance or arguments before this Court.

5

The majority's opinion also wholly fails to address the absence of mandatory findings the statute requires *before* an intervenor may invoke standing under N.C. Gen. Stat. § 50-13.1(a) (2023). This Court has previously held: "Despite the broad language of N.C. Gen. Stat. § 50-13.1, *non-parents do not have standing to seek custody against a parent unless they overcome the presumption that the parent has the superior right to the care, custody, and control of the minor child.*" *Perdue v. Fuqua*, 195 N.C. App. 583, 586, 673 S.E.2d 145, 148 (2009) (emphasis supplied) (citing *Petersen v. Rogers*, 337 N.C. 397, 403-04, 445 S.E.2d 901, 905 (1994)).

These holdings in *Perdue, Peterson,* and its progeny merely restate and apply the universal and fundamental law prohibiting unrelated third parties from interfering with a fit parent's right to the exclusive care, custody, and control of their minor child. "This Court has recognized that the protection of the family unit is guaranteed by the Ninth and Fourteenth Amendments to the United States Constitution." *Adams v. Tessener*, 354 N.C. 57, 60, 550 S.E.2d 499, 501 (2001) (citing *Petersen*, 337 N.C. at 401, 445 S.E.2d at 903).

Applying any "best interest of the child analysis" or other invented or purported basis, as between non-parents and parents, offends the Due Process Clause if no supported findings and conclusions prove the parent is unfit or has acted inconsistent with their constitutional right to parent their child. *Perdue*, 195 N.C. App. at 586, 673 S.E.2d at 148.

N.C. Gen. Stat. § 50-13.1(a) was never cited by Intervenor or the trial court or any party before this Court. The majority's conclusion improperly creates an argument for Intervenor that was not raised by Intervenor at trial or on appeal. *See In re E.H.*, 388 N.C. at 108, 919 S.E.2d at 239. The majority's holding also incorrectly affirms the trial court's basis for finding Intervenor, a third party who is admittedly wholly unrelated to the child, to have had standing under N.C. Gen. Stat. § 50-13.5(j). N.C. Gen. Stat. § 50-13.5(j) cannot provide standing to Intervenor for even visitation, much less custody, or for the trial court to provide the third-party Intervenor superior rights over Mother because Intervenor is not the minor child's grandparent and is not related to the child in any familial relationship or legal manner. N.C. Gen. Stat. § 50-13.5(j) (2023); *Adams v. Dillon*, __ N.C. App. __, __ S.E.2d __, 2025 WL 2524178 (Sept. 3, 2025) (denying all visitation and custody rights to a long-term, unrelated caregiver of an infant child, even as against a grandparent).

Intervenor was allowed to purportedly intervene *nearly a year after* the child's biological and fit parents had settled custody of their child on 9 December 2019 through a jointly entered order. No custody action was pending. *See McIntyre*, 341 N.C. at 634-35, 461 S.E.2d at 749-50. Lastly, without a finding Mother is unfit or has acted inconsistent with her constitutional rights to the exclusive care, control, custody, and to parent her child, Intervenor, an undisputed non-parent and non-relative, wholly lacks standing to interfere under N.C. Gen. Stat. § 50-13.1(a). *Perdue*, 195 N.C. App. at 586, 673 S.E.2d at 148.

Intervenor herself testified Plaintiff is a fit parent, who loves and cares for her child, yet she purports to decide, over Mother's objections, the child's grooming, appearance, training, schools, medical care, and other matters, contrary to and which lie exclusively within the care, custody, and control of a fit, biological parent. *Happel v. Guilford Cnty. Bd. of Educ.*, 387 N.C. 186, 194, 913 S.E.2d 174, 184 (2025) (providing "the state constitution protects a parent's right to control her child's upbringing, including her right to make medical decisions on her child's behalf" and explaining the "right to control the upbringing of one's own child is deeply rooted in '[t]he history and culture of Western civilization' and is 'now established beyond debate as an enduring American tradition'" (quoting *Troxel v. Granville*, 530 U.S. 57, 66, 147 L.Ed.2d 49, 57 (2000)). The trial court's intervention order is affected with prejudicial and reversible errors, the trial court is without jurisdiction, and the order is void. *Id.*; *Perdue*, 195 N.C. App. at 586, 673 S.E.2d at 148. The majority's opinion otherwise is erroneous.

## II. Contempt

Any orders entered on, or proceedings held after, the unlawful initial intervention are without jurisdiction, are invalid and void. *Eudy*, 288 N.C. at 75, 215 S.E.2d at 785; *State ex rel. Hanson*, 235 N.C. at 535, 70 S.E.2d at 568; *Hart*, 244 N.C. at 90, 92 S.E.2d at 678. The majority's opinion dismisses Mother's third argument regarding the trial court's unsupported and unlawful conclusion to find and hold Mother in criminal contempt. Mother specifically argues Finding of Fact 8 is

8

unsupported by the evidence or any legal basis.

Finding of Fact 8 provides:

> 8. Based on the evidence and testimony presented, the Court *finds beyond a reasonable doubt* that Plaintiff enrolled the minor child in daycare at Christ Way Child Development Center in early September of 2022 without the knowledge or consent of the Intervenor. This was in contravention of the July 26, 2022 custody order granting primary legal custody of the child to Intervenor and paragraph (7) of the Parenting Guidelines incorporated therein.

(emphasis supplied).

The 26 July 2022 purported custody order granting primary legal custody of the minor child to Intervenor is based upon an illegal intervention and is wholly unlawful. It was entered in gross derogation of Mother's Constitutional right to the exclusive care, custody, and control of her son. *Id.* Mother asserts the trial court also erred because the evidence does not show she unlawfully or otherwise enrolled her child in daycare, and she "was only taking the child with her while she herself worked at the daycare center" for eight times while being physically present with her child.

Mother testified regarding the daycare:

> Q. Okay. But it didn't start until what time in September that you started working at the daycare?
>
> A. It was the beginning of September.
>
> Q. Okay.
>
> A. I believe September 8th.

Q. Okay.  So it would have been less than – no more than eight, ten times?

A. Correct.

Q. Okay.  And if you hadn't been working there, would [K.B.] have gone to that daycare?

A. No.

Q. You pay for him to go there?

A. No.

Q. So you didn't – why didn't you have to pay?

A. Because I worked there.

Q. Did you stay in contact with [K.B.] during the day?

A. Yes.

. . . .

Q. So was [K.B.] one of the children you were looking after?

A. Yes.

Q. So were you with him all day?

A. Yes.

Q. Did you consider under the order that you were required to notify [Intervenor] of the situation?

A. No, I did not know I needed to tell her that, where I worked.

The majority's decision dismisses the trial court's conclusion of such evidence supports a finding of criminal contempt "beyond a reasonable doubt."  "'[W]hen the

court fails to find facts so that this Court can determine that the order is adequately supported by competent evidence . . . then the order entered thereon must be vacated and the case remanded for detailed findings of fact.'" *Hampton v. Hampton*, 29 N.C. App. 342, 344, 224 S.E.2d 197, 199 (1976) (quoting *Crosby v. Crosby*, 272 N.C. 235, 238-39, 158 S.E.2d 77, 80 (1967)).

Presuming jurisdiction and any lawful basis existed to enter such an order as against a fit Mother, the totality and *quantum* of the evidence presented, taken as true, does not survive a motion to dismiss nor support a conclusion of criminal contempt. *See Blanchard v. Blanchard*, 279 N.C. App. 280, 284, 865 S.E.2d 693, 697 (2021).

Based upon Mother's unchallenged testimony, Finding of Fact 8 is not based on substantial evidence to support criminal contempt to survive a motion to dismiss and certainly not to convict Mother "beyond a reasonable doubt." It is uncontested Mother lawfully took her child to her place of employment eight times, did not pay for the care, and was physically present with her child, while at her place of employment, and would otherwise not have been there. *Id.* Mother was required to put the school on written notice of her child's physical presence with Mother at the school where she was employed. *Id.*

### III. Conclusion

We all agree and I fully concur in holding, the trial court prejudicially erred in citing a wholly inapplicable statute to establish jurisdiction and standing to allow an

unrelated third party to intervene nearly a year after a final joint custody order had been entered between the biological fit parents. We also agree and I also concur with the majority's decision to vacate the purported and unlawful custody order because the trial court's conclusion a substantial change in circumstances had occurred is wholly unsupported by its findings of fact.

N.C. Gen. Stat. § 50-13.1(a) was never cited by Intervenor at trial, or by the trial court, or argued by Intervenor on appeal. The majority's conclusion improperly creates an argument for Intervenor because this argument was not raised by Intervenor at trial or before this Court. *See In re E.H.*, 388 N.C. at 108, 919 S.E.2d at 239. Intervenor failed to file any brief or to raise any arguments before this Court.

"This Court has recognized that the protection of the family unit is guaranteed by the Ninth and Fourteenth Amendments to the United States Constitution." *Adams v. Tessener*, 354 N.C. 57, 60, 550 S.E.2d 499, 501 (2001) (citing *Petersen v. Rogers*, 337 N.C. 397, 401, 445 S.E.2d 901, 903 (1994)).

Applying any "best interest of the child analysis" or other purported basis to intervene and to award primary custody, as between non-parents and parents, offends the Due Process Clause, where no supported finding and conclusion declares the parent is unfit or has acted inconsistent with their constitutional right to the exclusive care, custody, and control of their minor child. *Troxel*, 530 U.S. at 66, 147 L.Ed.2d at 57; *Happel,* 387 N.C. at 194, 913 S.E.2d at 184; *Petersen,* 337 N.C. at 403-04, 445 S.E.2d at 905; *Perdue*, 195 N.C. App. at 586, 673 S.E.2d at 148.

Without any Constitutional or jurisdictional basis, the trial court's order is void, properly vacated, and the entire illegal intervention and any custody and contempt orders are properly vacated and remanded for dismissal with prejudice. *Eudy*, 288 N.C. at 75, 215 S.E.2d at 785 ("Where jurisdiction is statutory and the Legislature requires the Court to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the Court to certain limitations, an act of the Court beyond these limits is in excess of its jurisdiction."); *State ex rel. Hanson*, 235 N.C. at 535, 70 S.E.2d at 568 ("A lack of jurisdiction or power in the court entering a judgment always avoids the judgment, and a void judgment may be attacked whenever and wherever it is asserted . . . ." (citations omitted)); *Hart*, 244 N.C. at 90, 92 S.E.2d at 678 ("A void judgment is, in legal effect, no judgment. No rights are acquired or divested by it. It neither binds nor bars any one, and all proceedings founded upon it are worthless."). I respectfully dissent.